[No. 13729. Department One. — February 16, 1891.]

## WILLIAM C. NAGLE, APPELLANT, v. CALIFORNIA SOUTHERN RAILROAD COMPANY, RESPONDENT.

NEGLIGENCE — RESPONSIBILITY OF RAILROAD COMPANY — SAFETY OF PASSENGERS. — Although a railroad company is responsible for the safety of its passengers, as far as human care and foresight will go, for the utmost care and diligence of very cautious persons, and for the slightest neglect, yet it cannot be held to the responsibility of warranting the safety of its passengers at all events.

ID. — CONTRIBUTORY NEGLIGENCE OF PASSENGER — QUESTION OF LAW. — It is for the court on the undisputed facts to determine whether or not the passenger was guilty of negligence which contributed to the injury sustained by him.

ID. — NONSUIT — EVIDENCE OF PLAINTIFF — BURDEN OF PROOF. — A nonsuit is proper when the evidence of the plaintiff so conclusively establishes his contributory negligence that the court would grant a new trial in case of a verdict in his favor upon the same evidence; and the fact that the burden of proof may be upon the defendant to establish the contributory negligence of the plaintiff will not preclude such nonsuit.

ID. — NEGLIGENCE OF PASSENGER IN ALIGHTING FROM TRAIN — MISTAKE OF FELLOW-PASSENGERS. — Contributory negligence is attributable to a passenger who, without any intimation from the train-men that it is his stopping-place, while the train is halting a moment upon a trestle, alights hurriedly in the dark, without carefully looking for a place to alight, and sustains injury from falling into a cañon beneath the trestle; and this, notwithstanding other passengers believed that it was a regular station, and some of them were preparing to leave the train, and the plaintiff was told by one of the passengers to get out quick, as the train would only stop a moment.

APPEAL from a judgment of the Superior Court of San Diego County, and from an order denying a new trial.

The facts are stated in the opinion.

*J. E. Deakin,* and *Deakin & Story,* for Appellant.

A common carrier is responsible for the very slightest negligence, and unless the accident happened under such circumstances that no human foresight could have prevented it. (Cooley on Torts, 642, 643; Shearman and Redfield on Negligence, 4th ed., p. 495; *Fairchild* v. *Cal.*

*Stage Co.,* 13 Cal. 605; *Boyce* v. *Cal. Stage Co.,* 25 Cal.
469; *Terre Haute etc. R. R. Co.* v. *Buck,* 96 Ind. 346; 49
Am. Rep. 183.)  Where the relation of carrier and pas-
senger exists, the contributory negligence of plaintiff
must be gross, to nonsuit the plaintiff. (Cooley on Torts,
375; Shearman and Redfield on Negligence, 519.)
Slight negligence will not defeat the action. (*Griffin* v.
*Willow,* 43 Wis. 509–512; *Robinson* v. *W. P. R. R. Co.,*
48 Cal. 422; *Strang* v. *S. & P. R. R. Co.,* 61 Cal. 328; *Dufour*
v. *C. P. R. R. Co.,* 67 Cal. 322.)  It is not contributory
negligence to accept the alternative of alighting from a
train in the dark, rather than be carried on beyond one's
destination. (*Delamay* v. *Milwaukee etc. R. R. Co.,* 24
Wis. 586; Shearman and Redfield on Negligence, 521;
*Taber* v. *Delaware etc. R. R. Co.,* 71 N. Y. 489.)  In such
a case as that at bar it is not contributory negligence
not to call or wait for a light. (*Jamison* v. *S. J. etc.
R. R. Co.,* 55 Cal. 598.)  Stopping the train at an un-
usual place put the company presumptively in the
wrong, and it was the duty of the train-men to give
warning to the passengers not to alight. (*Terre Haute
etc. R. R. Co.* v. *Buck,* 96 Ind. 346; 49 Am. Rep. 183.)

*A. Brunson,* for Respondent.

The plaintiff failed to prove any negligence on the
part of the defendant, and was properly nonsuited. A
wrong committed by the defendant is essential to a cause
of action for damage. (*Lamb* v. *Reclamation District,* 73
Cal. 131; 2 Am. St. Rep. 775.)  The train-men were
called from the car by danger signals, of which the pas-
sengers should have taken notice, and the train-men were
not bound to leave their post of duty to warn passengers
not to alight. It was their legal right and duty to slow
up or stop the train, where danger was known to exist.

FOOTE, C. — The plaintiff brought this action to re-
cover damages for injuries caused him by the alleged

carelessness and negligence of the defendant. After the introduction of the plaintiff's evidence, a jury having been waived, the defendant moved for a nonsuit, which was granted. From the judgment rendered in the premises, and an order denying a new trial, this appeal is taken.

The facts as they appear in the evidence of the plaintiff are, that on Sunday night, April 15, 1888, he was traveling on the defendant's railroad; had bought his ticket at San Diego for La Jolla, a station on that road. He had been on this journey before, in the daytime, and knew that at La Jolla there was a platform to get out upon, and that it had a shed over it, and the ground was level around the station at that point. In going from San Diego to La Jolla before, he knew the train had only made three stops, — at Old Town, Morena, and La Jolla. There were five other persons with him on the present trip, passengers to La Jolla. He did not know whether there were lights about La Jolla and the station at night. The train stopped some time at Old Town to water or coal; it then stopped at Morena. After this it again stopped; he did not not "know what for." Everybody got astir in the car, and "the men allowed this was La Jolla." There was a kind of rush; that is, of the men in the car who had to get off at La Jolla, thinking they were there. The man alongside of the plaintiff stood up; the latter sat still until the train came to a stop. The man said: "You had better get out quick; the train don't stop a minute." The plaintiff got out, and in doing so, "walked right off, and went down a cañon, as our car was standing on a trestle-work." He did not know how long this was after leaving Morena, or how far this place was from La Jolla. He thought he was walking down the steps to "the platform," instead of which he went down the cañon. He fell ten or twelve feet; nobody else got out; he sprained his ankle and suffered other injuries.

On cross-examination, he did not seem to be certain that the train did stop at Morena, or how long; when the whistle blew he did not see the conductor, the latter having taken up the plaintiff's ticket before the train stopped; nor did he see any of the train-men when he walked off.  The whistle was blown sharply, but how many times he did not remember.  On redirect examination he knew that the train stopped twice after leaving San Diego before reaching the trestle, once at Old Town and once at Morena.

The plaintiff thought the distance from where he walked off to La Jolla "must have been a couple of miles."

His brother, also a witness for him, stated that it might be "in the neighborhood of a mile," it may be a little more or less, and that he had heard it was about four miles between Morena and La Jolla.  He and the other men in company thought the stop was for La Jolla. There had been no warning that they were going to stop, or that they must keep their seats.  "From habit of getting off at the third stopping-place, we made the move to get off there."

On cross-examination, he thought the distance to La Jolla from where the plaintiff stepped off was more than a mile.  He heard no whistle, and the train stopped on the trestle perhaps a minute.  At the time the train stopped, neither conductor nor train-men were in the car.

Three of the company went out at one door of the car and three at the other.  Another witness for plaintiff testified that the night was rather dark; that the third stop, which they supposed to be La Jolla, was about midway between Morena and La Jolla; that is, about two miles from either place.  He did not know what the train stopped for at the third point; it was "no stopping-place at all; it was just simply a stopping-place for the train."  He got up to get off at a different door from the plaintiff, but did not get off.  He thought it "pretty

hard to look the length of the car and tell the parties
and recognize them." He did not think the train stopped
at the trestle over *fifteen seconds.* It was just about time
enough to come to a stand-still and move on. "It only
came to a stand-still, and moved." He "judged" the
trestle was about midway between Morena and La Jolla.
He heard none of the train-men say it was La Jolla; there
was no station called or mentioned by any of them.

Another witness swore that the train stopped at Old
Town, then at another little station; "after that they
stopped where there had been a washout; they had been
working there, and they never 'hollered' for a station;
they kind of checked up there. It was dark. We started
to get off. Mr. Nagle (the plaintiff) got off, and when he
got off he fell." They started so quick that he, having
some bundles to gather up, did not have time to get off.

From all this it appears that the cause of the stoppage
of the train was a proper one, that due care might be
taken of the whole train and all the passengers on it.
As the train was approaching a washout, where danger
might exist, it was the duty of the conductor and train-
men to be at their several stations — at the brakes and
on the lookout — to see that there was no injury likely
to result in passing this dangerous spot on the road.
They could not perform this in the short time of the
stoppage, and also go through the cars to warn pas-
sengers not to get out. For this stoppage lasted at the
most a minute, or as a witness said, not more than "fif-
teen seconds." If they had acted as the plaintiff seems
to contend they should, and an accident had happened to
the train, and injuries been received by the passengers,
then the negligence of the defendant would have been
apparent. It was evidently the *habit,* that of making
the *third* stop at La Jolla, that induced the plaintiff and
his companions to rush for the door, and the former to
jump out so quickly as not either to attempt to look
about and see if he was at La Jolla, or apparently to use

any sort of precaution in seeking to ascertain at what kind of a place he was stepping off.

It appears that no one else got off. And conceding that the two persons immediately behind the plaintiff did not get off because he had stepped off into the cañon, yet it still appears that none of the three at the other door of the car got off, probably because they saw they were not at La Jolla, or that the place of the stoppage was not a proper place at which to get off.

It does not appear to have been so dark but that a person, by the proper use of his eyes, might have distinguished a cañon lying immediately before him, ten or fifteen feet deep, from a level place, where there was a platform and shed over it, which were to be seen at La Jolla. Instead of attempting to do this, the plaintiff heedlessly jumped off the car, and could not have taken time to look about him, as it would appear.

The defendant cannot be held to the responsibility of warranting the safety of the plaintiff at all events. (*Treadwell* v. *Whittier*, 80 Cal. 585, 586; 13 Am. St. Rep. 175.)

It is "responsible, as far as human care and foresight will go, for the utmost care and diligence of very cautious persons, and therefore for the slightest neglect." (*Treadwell* v. *Whittier*, 80 Cal. 595; 13 Am. St. Rep. 175.)

It was for the court, on the undisputed facts, to determine if the plaintiff was guilty or not of contributory negligence. (*Glascock* v. *C. P. R. R. Co.*, 73 Cal. 137.) And even if the burden of proof is on the defendant to show contributory negligence on the part of the plaintiff, this does not preclude a judgment "by way of nonsuit, whenever the evidence of the plaintiff so conclusively establishes a defense as that the court would grant a new trial in case of a verdict in his favor upon like evidence." (*McQuilken* v. *C. P. R. R. Co.*, 50 Cal. 8.)

The plaintiff had no intimation from the train-men that this was his stopping-place, or that he should get off,

but got off apparently because some irresponsible person said it was La Jolla, and perhaps because of the habit of persons getting off there usually as the third stopping-place from San Diego. He got off in the dark, when the best use of one's eyes is necessary, and we must suppose that his were good. He should at least have used them, acting, as he was, upon his own responsibility, with sufficient care to have "looked before he leaped." This is the rule, as we think, announced in *Flemming* v. *W. P. R. R. Co.*, 49 Cal. 257; *Glascock* v. *C. P. R. R. Co.*, 73 Cal. 140.

We think the judgment and order should be affirmed, and so advise.

VANCLIEF, C., and BELCHER, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are affirmed.