[Civ. No. 1528.    Second Appellate District.—June 3, 1914.]

YAHACHI SHIMODA, Appellant, v. JOHN BUNDY et al., Respondents.

NEGLIGENCE—COLLISION OF AUTOMOBILE WITH MOTORCYCLE—OPINION OF INJURED PERSON AS TO SPEED OF AUTOMOBILE.—In an action by the rider of a motorcycle to recover for personal injuries suffered through a collision with an automobile, it is error to refuse to allow him to testify as to the speed of the automobile at the time of the accident, upon .the theory that he did not have sufficient opportunity to form an opinion upon the question by reason of having been knocked down immediately after reaching a point where he could

see the automobile, where it appears that not only did he see the automobile before it struck him and have time to turn the handlebars of his motorcycle so as to change his course, but that he thereafter observed the speed of the automobile while it was running a distance of half a block ahead.

ID.—SPEED OF AUTOMOBILE—COMPETENCY OF WITNESS TO GIVE OPINION. A person of ordinary intelligence, having opportunity for observation, is competent to testify as to the speed at which an automobile was being operated at a given time. .

ID.—DIRECTING VERDICT FOR DEFENDANT—WHEN UNWARRANTED.—If in such action the facts and circumstances shown by the evidence are such that the jury may as reasonable and impartial men draw the inference therefrom that the defendant was negligent, it is error to take the case from the jury and direct a verdict for the defendant.

ID.—DIRECTED VERDICT—WHEN PROPER—ABSENCE OF CONFLICT IN EVIDENCE.—A directed verdict is proper whenever, upon the whole evidence, the judge would be compelled to set a contrary verdict aside as unsupported by the evidence. It is not necessary that there should be an absence of conflict in the evidence, but, to deprive the court of the right to exercise this power, if there be a conflict, it must be a substantial one.

ID.—FAILURE TO REGISTER MOTORCYCLE AS REQUIRED BY ORDINANCE—WHETHER BARS ACTION BY OWNER.—The failure of the driver of the motorcycle to register it as required by ordinance as a condition to lawfully operating it on the streets of the city, does not bar his right to recover for negligently being struck by the driver of the automobile.

ID.—VIOLATION OF ORDINANCE—WHETHER BARS ACTION FOR NEGLIGENCE. The violation of an ordinance which directly contributes to personal injury caused by the negligence of another bars the right to recover, but where such violation bears no causal relation to nor contributes to the injuries sustained, this rule has no application.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Walter Bordwell, Judge.

The facts are stated in the opinion of the court.

Flint, Gray & Barker, and Gray, Barker & Bowen, for Appellant.

George P. Adams, and Stephens & Stephens, for Respondents.

SHAW, J.—This is an action to recover damages for personal injuries alleged to have been sustained as a result of the negligence of defendants in operating an automobile which collided with a motorcycle upon which plaintiff was riding on Ninth Street in the city of Los Angeles.

At the close of the evidence the jury, under direction of the trial court, returned a verdict for defendants. The appeal is from the judgment and an order denying plaintiff's motion for a new trial.

The collision occurred at a point where Ninth Street, which extends east and west, intersects an alley nineteen feet and seven inches wide, extending north and south. According to plaintiff's testimony, he was engaged as a gardener and about 9 o'clock A. M. on January 19th, having completed his work, he mounted his motorcycle at a point on the west side of the alley disant one hundred and fifty feet north of its intersection with Ninth Street and, without using the power but pedaling the machine, started toward Ninth Street, traveling at a speed of less than five miles per hour. He was on the west side of the alley and as he neared Ninth Street kept within two or three feet of the west line thereof. As he approached Ninth Street he looked on both sides of the alley where it opened into Ninth Street and saw a gravel wagon on Ninth Street approaching from the east toward the alley, the heads of the horses drawing the wagon being distant six or seven feet from the east line thereof, and another wagon which had passed the alley going west. Although he looked, he saw no automobile and, though he listened, heard no horn or other warning of its approach. He passed out of the alley in front of the gravel wagon, immediately after which defendants' automobile, traveling west on Ninth Street, struck the left side of the front wheel of plaintiff's motorcycle, throwing him down, as a result of which he was seriously injured. When thrown down he immediately jumped up to see the automobile, and saw it pass over Burlington Avenue. He did not lose consciousness and had full possession of his faculties from the time of the collision until removed in the ambulance; he saw the automobile the instant before it struck him and turned the handle-bars of his motorcycle to the right, thus changing his course, in an effort to avoid the collision; after being struck he got up, but fell down again; he watched

the speeding automobile until it reached Burlington Avenue, the street next west of the alley; he had attended automobile school, qualified as a driver and knew and had estimated their speed within one-half mile per hour. A city ordinance was introduced which limited the speed of and made it unlawful for any one to operate an automobile at the point where the collision occurred at a speed in excess of twenty miles per hour. Thereupon he was asked the question: "Can you esti-· mate the speed at which that automobile was traveling at the time that it struck you?" to which an objection, upon the ground that it was incompetent and immaterial and no foundation laid as to the estimate, was by the court sustained on the ground, as stated, "that from the testimony of the witness already given it is impossible for him to make the estimate." He was further asked: "Now, Shimoda, what was the speed of the automobile at the time that you first saw it?" to which the court sustained an objection. He was again asked: "What speed was the automobile going in miles per hour at the time it struck you" to which defendants' objection, upon the ground that it was incompetent, irrelevant, and immaterial and no proper foundation laid, was sustained. Thereafter plaintiff offered to prove by the witness that, from seeing the automobile at the time it struck him and immediately prior thereto and thereafter, and as he saw it afterwards while being run to Burlington Avenue, he could and did form an estimate of the speed in miles per hour at which it was running, and that at the time it collided with his motorcycle it was running at a speed of from thirty to forty miles per hour. The court refused to permit him to so testify. This ruling of the court is assigned as error. Counsel for respondents attempt to justify the same upon the well-recognized rule that whether or not one be qualified to testify as an expert is a question of fact to be determined by the trial court, whose decision will not be disturbed unless error clearly appears; in reply to which it may be said that the witness was not called as an expert. No question other than the speed of a moving object was involved, as to which any intelligent person accustomed to observing moving objects would be able to express an opinion of some value. The rule, as to which there is little conflict and applicable alike not only to automobiles, but to all moving objects, is that a person of ordinary intelli-

gence, having opportunity for observation, is competent to testify as to the speed at which an automobile is being operated at a given time. (*Wolfe* v. *Ives,* 83 Conn. 174, [19 Ann. Cas. 752, 76 Atl. 526] ; *Matla* v. *Rapid Motor Vehicle Co.,* 160 Mich. 639, [125 N. W. 708] ; *State* v. *Watson,* 216 Mo. 420, [115 S. W. 1011] ; *Detroit & M. R. R. Co.* v. *Van Steinburg,* 17 Mich. 104; *Johnsen* v. *Oakland etc. Ry. Co.,* 127 Cal. 608, [60 Pac. 170].) The ruling, however, appears not to have been based upon the grounds stated in the objection to the question, but by reason of the fact that in the opinion of the learned trial judge plaintiff did not have sufficient opportunity to form an opinion upon the question as to the rate of speed at which the automobile was running. This by reason of the fact that, as shown by his testimony, plaintiff was knocked down immediately after emerging to a point from which he could see the automobile. This conclusion finds some support in *Wright* v. *Crane,* 142 Mich. 508, [106 N. W. 71], where it appeared that the witness, who testified that an automobile when he first discovered it was but twenty feet from his horse's head, based his opinion upon the ground that, while he did not see it, an automobile running at a high rate of speed makes little noise and makes much more noise when running at a low rate of speed. It appears here that not only did plaintiff see the automobile before it struck him and had time to turn the handle-bars so as to change his course, but saw and estimated its speed while running a distance of half a block to Burlington Avenue. In the case of *Himmelwright* v. *Baker,* 82 Kan. 569, [109 Pac. 178], the plaintiff testified that the car was ten or fifteen feet from him when he first saw it and was running so fast that, although he made an effort, he had no time to get away from it. He was then asked at what rate of speed it was running, and answered that it was fifteen miles an hour. This answer was stricken out on the ground that it appeared he did not have sufficient opportunity to form an opinion on the question of speed. The court held the ruling to be error. A mathematical calculation shows that if the automobile was running twenty miles an hour, it would have required one-half second to cover fifteen feet. If running at forty miles per hour, as claimed by plaintiff, it would have covered thirty feet in the same length of time. The opinion or estimate of the witness as to the

rate of speed at which the automobile was being propelled at
the time of the collision might, by reason of his lack of op-
portunity to judge thereof, be entitled to little value, but this
merely goes to the weight to be given the testimony, which was
a question for the jury.   The court erred in excluding the tes-
timony.

Max Spaeny, called as a witness on behalf of plaintiff, tes-
tified that he saw the collision when the automobile struck the
front of the motorcycle, knocking plaintiff off and down, and
watched the automobile until it went up to Burlington Ave-
nue; that plaintiff after being knocked down tried to get up,
but being unable to do so, raised his head and looked steadily
after the automobile; that he was in the alley as plaintiff
passed him going out.   This witness testified that he was un-
able to determine or estimate the speed at which the auto-
mobile was running, but for the purpose of showing the speed
at which it was operated at the time of the collision the wit-
ness was permitted, without objection being interposed thereto,
to testify that at the time of the collision the automobile was
running at about the same speed as a car operated over the
same street and at the same place, the speed of which he had
witnessed a few days before the trial, and testimony was then
offered to show that this car with which the witness had com-
pared the speed of defendants' automobile was at the time
operated at an actual speed of 27½ miles per hour.   It is con-
ceded the testimony given by the chauffeur in charge of the
car contradicted the evidence adduced on behalf of plaintiff
as to every material issue.   He testified that he knew of and
was familiar with the location of this alley and knew that it
was used as a thoroughfare by people using wagons, motor-
cycles and other vehicles; that as he approached the point
on Ninth Street intersecting the alley his view thereof was
obstructed by a wagon loaded with hay, over the top of which
he could not see, and which with the team drawing the same
extended across seven-eighths of the mouth thereof; that he
was looking at his speedometer and was running at a speed of
only fifteen miles per hour and did not see plaintiff or know
that he had struck him until feeling a jar from the collision
he stopped his car within eight feet of the point where the
collision occurred, and looking back saw plaintiff lying in the
street.

The question presented is whether or not under this evidence the court was warranted in taking the case from the jury and directing a verdict for defendants. In the late case of *Estate of Baldwin,* 162 Cal. 471, [123 Pac. 267], it is said: "A directed verdict is proper whenever, upon the whole evidence, the judge would be compelled to set a contrary verdict aside as unsupported by the evidence." And further, as touching the question, it is said: "It is not necessary that there should be an absence of conflict in the evidence, but, to deprive the court of the right to exercise this power, if there be a conflict, it must be a substantial one," in support of which proposition a number of California cases are cited. Accepting as the law this latest expression of the supreme court, announced in the Baldwin case, can it be said the rule applies to a case where, as here, it is sought to recover for the alleged negligence of defendants, the existence of which depends upon inferences to be drawn from the facts and circumstances shown by the evidence and as to which reasonable and impartial men may differ in the conclusions drawn? Negligence is not absolute, but relative, depending upon some circumstance of time, place, or person, or combination thereof. If the jury had been satisfied that defendant Bundy, as he stated, was operating his car at a speed of only fifteen miles per hour and had it under such control that enabled him to stop it within a distance of eight feet from the point of collision, and this notwithstanding the fact that he did not see plaintiff before striking the motorcycle; or, on the other hand, that he was runnng at thirty miles per hour and was familiar, as he stated, with the fact that the alley was used as a thoroughfare by parties operating vehicles in coming therefrom into the street; and that in either case the mouth of the alley was not obstructed by any wagon, whether loaded with hay or gravel, by reason of which fact Bundy could have seen plaintiff had he looked, or looking did see him and made no effort to avoid the collision; and that plaintiff, as stated by him, did look and listen, but neither saw nor heard anything indicating the approach of an automobile, they might have concluded plaintiff's injuries were due to a want of reasonable care on the part of the defendants, in which case, had the trial court denied a motion for a new trial, this court on appeal could hardly be expected to reverse same for want of

evidence to support the verdict. Other fairly debatable theories based upon evidence adduced might be constructed which, if accepted by the jury, might entitle plaintiff to recover. While the case presented is one where the trial judge *might* have set aside a verdict rendered for plaintiff, nevertheless, it is not one in which the court would be *compelled* to do so.

There was introduced in evidence a city ordinance requiring all motorcycles to be registered and numbered. This ordinance provided that every owner of a motorcycle should file in the office of the city clerk a statement in writing showing the name and address of such person, description of the motorcycle, name and maker thereof, and factory number, and that the city clerk should issue to him a metal seal, approximately two inches in diameter, upon which should be stamped, "Registered.Motorcycle No. ——, City of Los Angeles," with the registration number inserted therein, which seal was required to be conspicuously displayed upon the motorcycle to which it was assigned. Section 4 of the ordinance made it unlawful for any person to operate a motorcycle upon the streets unless the registration seal and number belonging thereto was displayed thereon as required by the ordinance. Section 5 provided that "it shall be unlawful for any person . . . to use or operate, . . . any motorcycle . . . upon or in any public street or thoroughfare, unless the owner thereof shall have complied in all respects with this ordinance." For violation of the provisions of the ordinance the offender was made subject to punishment by fine or imprisonment, or both. It is conceded that plaintiff did not file a statement with the city clerk, nor procure the registration of his motorcycle,. as required by the provisions of the ordinance. Respondents insist that by reason of such neglect and failure on the part of plaintiff to comply with the ordinance, and even though it be conceded that the negligence of defendants was the direct and proximate cause of the damage sustained by him, he is not entitled to recover therefor. This contention is based upon the theory that, since the ordinance made it unlawful for him to operate the motorcycle, he was, as to defendants and the city, a trespasser upon the street, to whom defendants owed no duty other than to refrain from willfully or wantonly injuring him or his property. This view finds support

in the case of *Dudley* v. *Northampton Street R. Co.*, 202 Mass. 443, [23 L. R. A. (N. S.) 561, 89 N. E. 25], which involved an act of the legislature containing a provision not unlike those contained in the ordinance before us. It is there held, quoting from the syllabus. "One operating an automobile on a public highway in violation of a statute prohibiting the operation thereon of unregistered machines, has no right of action against one who injures it merely by want of ordinary care." "The legislature," says the court, "in the opinion of a majority of the court, intended to outlaw unregistered machines, and to give them, as to persons lawfully using the highways, no other right than that of being exempt from wanton or willful injury." The general rule appears to be that the violation of an ordinance which directly contributes to the injury caused by the negligence of another bars the right to recover, but *where such violation bears no causal relation to nor contributes to the injuries sustained, the rule has no application.* (*Newcomb* v. *Boston Protective Dept.*, 146 Mass. 596, [4 Am. St. Rep. 354, 16 N. E. 555]; *Frontier Steam Laundry Co.* v. *Connolly*, 72 Neb. 767, 68 L. R. A. 425, [101 N. W. 995]; *Needham* v. *San Francisco & S. J. R. Co.*, 37 Cal. 409; *Schierhold* v. *North Beach & M. R. R. Co.*, 40 Cal. 447; *Monroe* v. *Hartford St. Ry. Co.*, 76 Conn. 201, [56 Atl. 498]; *Broschart* v. *Tuttle*, 59 Conn. 1, [11 L. R. A. 33, 21 Atl. 925]; *Shaw* v. *Thielbahr*, 82 N. J. L. 23, [81 Atl. 497].) Indeed, the Massachusetts court, in a later case entitled *Bourne* v. *Whitman*, 209 Mass. 155, [35 L. R. A. (N. S.) 701, 95 N. E. 404], refused to extend the doctrine of the Dudley case to one where the plaintiff was in default in that he had not complied with an act requiring the issuance of a license as a condition of lawfully operating a vehicle. Even where the violation of an ordinance constitutes negligence *per se*, there must be, in order for plaintiff to recover, a causal relation between the violation of the ordinance and the injury complained of. (*Lindsay* v. *Cecchi* (Del.), 35 L. R. A. (N. S.) 699, 80 Atl. 523.) The conclusion of the Massachusetts supreme court, divided, however, as it was, appears to have been based upon the theory that the legislature of that state intended by the act to create a duty to other travelers upon highways, and not merely to declare a public duty to be enforced by the imposition of the penalties therein prescribed in the

ordinary administration of the criminal law.   We are unable to appreciate the distinctions sought to be drawn, and unwilling to accept its decision as the law of this state when applied to the ordinance in question.   Moreover, if the automobile was operated at a rate of speed in excess of that prescribed by the ordinance, it was not *lawfully traveling* upon the street, as was defendant in the Dudley case, which fact is given particular emphasis.   While the courts, invoking the maxim *ex pacto illicito non oritur actio,* in a certain class of cases close their doors in the face of one guilty of moral turpitude in attempting to enforce an illicit contract, thus leaving the parties as they found them, such principle is wholly inapplicable to the facts here involved.   Our conclusion is that one who violates an ordinance wherein a penalty is fixed for noncompliance with its provisions, may be subjected to the penalties therein prescribed, but he cannot, in addition thereto, be deprived of his civil right to recover damages, perhaps in many thousands of dollars, sustained by reason of the negligence or wrong of another, when such violation bore no relation to the injury and did not contribute in the remotest degree thereto.   In our opinion, such was not the intent of the legislative body of the city of Los Angeles in adopting the ordinance.

The judgment and order are reversed.

Conrey, P. J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 31, 1914.