[Civ. No. 5125. Third Appellate District.—October 1, 1934.]

LOLA MAY CASEY et al., Respondents, v. JOSEPH A. GRITSCH et al., Appellants.

Elliott, Atkinson & Sitton and Christopher M. Bradley for Appellants.

Downey, Brand & Seymour, T. L. Chamberlain and Shannon Turner for Respondents.

PLUMMER, J.—In this action prosecuted by the widow and children of John Casey, judgment was entered against the defendants on account of the alleged negligence of the defendant Alfred K. Hansen, the driver of a truck belonging to Joseph A. Gritsch. From this judgment the defendants appeal.

The record shows that Alfred K. Hansen had been for over a year in the employ of the defendant Joseph A. Gritsch, in driving a truck from San Francisco to Reno, Nevada, in the operation of· a freight line belonging to the defendant Gritsch. The truck was of a large box-car type approximately 22 feet long and 8 feet wide, the top of the truck being about 11 feet from the ground; the rear of the truck rested upon two sets of double wheels. The testimony as to the portion of the truck remaining upon the highway revolved around the position of these wheels after the truck had come to a stop.

The trips from San Francisco to Reno were made in the night-time; likewise, the return trips from Reno to San

Francisco were made at night. The practice had been to take on gasoline at San Francisco, drive to Reno, and return as far as North Sacramento before taking on any additional fuel. At times the truck was conveyed by boat from San Francisco to Vallejo; at other times the truck was conveyed by its own power overland the entire distance, save the crossing of the bay. Whether, on the trip from San Francisco to Reno, preceding the occurrences hereinafter mentioned, the truck had been conveyed from San Francisco to Vallejo, is left uncertain by the testimony, as the driver stated he did not remember definitely.

The scene of the accident involved herein is about one mile north of North Sacramento, and is located on what is known as the Auburn boulevard, a paved highway consisting of three traffic lanes separated by white stripes, each traffic lane being 10 feet in width. From a point on the highway known as Ben Ali Station, to the scene of the accident, the highway is practically straight.

About 2 o'clock A. M., February 17, 1933, as Hansen was returning from a trip to Reno, he noticed, as he rounded a slight curve on the highway near Ben Ali Station, that the engine of his truck sputtered. Applying his foot to the accelerator the engine at first did not seem to take any gas; a little later it took some gas; he passed down the boulevard several hundred feet, passing what is known as Hasley's filling station and proceeded approximately 600 feet therefrom; as he was proceeding over this distance he noticed that his engine was not taking gas, and according to the testimony, at the time the gasoline gave out he was traveling between 20 and 25 miles per hour, and thereafter the truck rolled about 15 truck-lengths, which would be approximately 330 feet, during which time he guided the truck partly off the highway. As to how far the rear end of the truck was left on the paved portion of the highway, the testimony is conflicting, but there is sufficient in the record to show that the truck was left on the paved portion of the highway from 4 to 8 feet.

In guiding the truck off the paved portion of the highway it appears that it was left standing somewhat at an angle. Along the right-hand side of the paved portion of the highway, as one proceeds from Hasley's filling station to the point where the truck stopped, the testimony is again

conflicting as to the width of the shoulder, and also as to its condition. There is, however, in the record, testimony to the effect that this shoulder is at least 8 feet wide, and is sufficiently solid, and was at the time of the accident sufficiently substantial to justify the parking of the truck completely off the paved portion of the highway.

As to the condition of the rear lights on the truck, the testimony is again conflicting. Several witnesses testified that the bulb of the red light on the truck was covered with dust and dirt, so that it was quite dim; also, that the battery of the truck was weak, which again resulted in the red light being dim. On the other hand, there is some testimony in the record that the red light in question could be seen from 600 to 1200 feet from the rear of the truck.

While the testimony of the defendant Hansen is to the effect that it had been the usual custom to refuel the truck in North Sacramento, the record is absolutely wanting as to whether any inspection was made by the defendant Hansen on any portion of the trip to ascertain the quantity of fuel supply that he had on hand; nor does it appear in the record that the truck was equipped with any gasoline-gauge or contrivance on the instrument-board of the truck to warn the driver as to whether his fuel supply was adequate or inadequate.

After the truck had stopped, the defendant Hansen made some effort to start the engine by cranking, explaining that he did not attempt to use the self-starter on account of the weakened condition of the battery. After attempting to start the engine by cranking, the defendant Hansen discovered his lack of fuel, took a can from his truck and started back to Hasley's filling station to obtain a supply of gasoline, taking with him a flashlight. At this juncture a Studebaker car owned by John Casey, in which he was then riding, driven by Frank Williams, came along at an approximate speed of 45 miles per hour passing the defendant Hansen, who, standing on the opposite side of the highway, waved, or, as he said, jiggled his flashlight at the passing motorist as a warning of the existence of the stalled truck. Williams and Casey proceeded southward along the highway on the right-hand lane thereof, not discerning the presence of the truck until within from 75 to 90 feet thereof.

Williams testified that at the instant of seeing the red light on the truck, he thought it was moving, but immediately thereafter, discerning that it was standing still, swerved his car to the left for the purpose of avoiding the truck, and it appears that the front end of the Studebaker car missed the truck, but going diagonally across the highway to the left, the right-hand side of the Studebaker car came in contact with the left rear end of the truck or box-car portion thereof, killing Casey and causing the Studebaker car to turn over. There is also some testimony in the record to the effect that the angle at which the truck was standing rendered the clearance lights on the truck invisible, assuming that they were lighted.

It may be further stated that from the curve on the highway at Ben Ali Station, for a few hundred feet, there is a slight decline, and from Hasley's filling station to the scene of the collision there is a slight incline in the highway. While there is no testimony in the record showing any ditches alongside the boulevard, there is some testimony that outside of the shoulders which we have mentioned, there were some puddles of water standing. However, the record shows that after the collision, cars passing southward drove around the stalled truck, completely off the highway and along the right-hand side of the standing truck.

There is also some testimony in the record that the day previous had been rainy and the night was cloudy and quite dark.

At the time Williams perceived the presence of the truck, his testimony is that he took his foot off the accelerator, but did not apply the brakes. The red light on the rear of the truck was a little over 3 feet from the left-hand corner thereof. The truck was painted a dark green.

Upon the facts shown by the testimony, a summary of which we have set forth, the appellants contend that Hansen was not guilty of negligence as a matter of law, and that Williams was guilty of negligence as a matter of law. No question is made as to Hansen being the agent of Gritsch, nor that if Williams was negligent, his negligence should be imputed to the deceased Casey.

Section 106 of the California Vehicle Act requires that every vehicle shall be equipped with a red light affixed to the rear thereof, which will be plainly visible under normal

atmospheric conditions for a distance of 500 feet. As to whether this light was so visible, the testimony is conflicting. Likewise, there is some variance in the testimony as to the cause of the claimed dimness of the light.

The testimony shows that on the night in question the truck had traveled from Reno to the place of the accident, through a slight snow-storm, and that the red bulb was covered with dust or dirt, thereby dimming the light and shortening the distance at which it could be observed. We may also note the fact that the truck was standing at an angle on the highway so that the direct rays of the red light did not strike directly down the lane on which Williams and the deceased were traveling.

Section 136 of the California Vehicle Act specifies that no person shall park or leave standing any vehicle, whether attended or unattended, upon the paved portion or improved portion of a public highway, etc., outside of a business or residence district, when it is practicable to park or leave such vehicle standing off the paved or improved or main traveled portion of such highway. The second paragraph provides that the section shall not apply to any vehicle which is disabled in such a manner and to such an extent that it is impossible to avoid stopping and temporarily leaving such vehicle on such portion. In this connection the appellants contend that it was the duty of the plaintiffs to establish by testimony that it was practicable to stop the truck and leave it standing completely off the paved portion of the highway. This, however, is not a correct statement of the law. The section of the California Vehicle Act makes it unlawful to leave a vehicle standing upon the paved or the main used portion of a public highway, and then specifies certain exceptions which, if proven, relieves the person who leaves such vehicle so standing upon the highway, free from responsibility. The correct rule we think is stated by the Supreme Court of Oregon, in the case of *Watt* v. *Associated Oil Co.*, 123 Or. 50 [260 Pac. 1012], to wit: ''One who parks his automobile upon the public traveled part of a highway is *prima facie* a violator of the law, and it is incumbent upon him to show affirmatively that it was necessary for him to so park it at that time and place. It is not the duty of a party injured in a collision under such circumstances, to show that such parking was not

necessary, but for the other party to bring himself within the exception provided by the statute. Of course, the mere fact that such parking is unnecessary will not permit a recovery by one who recklessly or carelessly runs against the car so parked. Contributory negligence is still a defense, but this must be pleaded and proved either by the circumstances or by affirmative testimony." In that case, as in the one before us, the driver of the automobile colliding with the truck stopped upon the paved portion of the highway, when he first perceived the presence of the truck, thought it was moving in the same direction, but shortly thereafter perceived that it was standing, but not in time to avoid a collision by stopping his own vehicle. An automobile was approaching on the left-hand side of the highway, preventing the plaintiff from attempting to pass the standing truck to the left. The questions as to the negligence of the driver of the standing truck, and as to the contributory negligence of the driver of the automobile that collided therewith, were left to the jury.

In the instant case there is no question but that there was a free highway to the left of the standing truck, had Williams, as the driver of the Casey car, perceived that the truck was standing, in time to swerve a sufficient distance to the left to avoid the collision. In this particular it is worth while to consider the location of the red light on the truck. Mention may also be made of the fact that the truck carried no white light, as provided by the California Vehicle Act, showing the license number. As stated herein, the red light on the rear of the truck was a trifle over 3 feet from the left rear corner thereof. This red light, of course, is a signal of danger, but it is also more than a signal of danger. As said in *Martin* v. *Puget Sound Electric R. R. Co.*, 136 Wash. 663 [241 Pac. 360]: "While a red light is a signal of danger, it is also a signal that usually points out the place of danger. If it is on one side of the highway, an approaching driver has a right to assume that it marks the limit of danger, and that the other side of the highway is clear. It is only when the light blocks the highway or is so placed as to indicate that the passage is so narrow as not to afford a safe passage within the speed limit, that he is chargeable with negligence if he does not approach with his vehicle under control."

Applying this rule, the testimony shows that the driver of the Casey car altered his course sufficiently to the left to avoid the indicated place of danger. The question of whether the dark green 3 feet of the truck to the left of the indicated point of danger should have, or could have been perceived by Williams in time to alter the course of his car sufficiently to avoid the collision, was something for the jury to consider in determining the question of his contributory negligence. Likewise, the question of whether Williams was guilty of contributory negligence in not observing the position of the truck and its stationary position in time to avoid the collision was a question of fact for the jury.

■  While the appellants have cited a number of cases holding that it is negligence for a driver to propel an automobile at such a rate of speed that it cannot be stopped within the radius of his headlights, it is unnecessary to review such cases because that rule of construction has never been applied in this state. (See opinion denying rehearing in the case of *Burgesser* v. *Bullocks*, 190 Cal. 679 [214 Pac. 649].)

The same question was before the court in the case of *Sawdey* v. *Producers' Milk Co.*, 107 Cal. App. 467 [290 Pac. 684]. There, it was urged that Sawdey was negligent because he did not travel at such a rate of speed that he could stop within the radius illuminated by his lights. The court held that the Wisconsin rule which predicated negligence as a matter of law in driving at such a rate of speed that one could not stop within the radius illuminated by his lights, and which rule had been adopted in a number of eastern states, had not been adopted in this state. A petition for hearing in the Supreme Court, after decision of the District Court of Appeal, was denied.

Again, it is urged that Williams should have seen the standing truck had he kept a proper lookout. The testimony of Williams is to the effect that he was so doing, which presents a question similar to that passed upon by this court in the case of *Flynn* v. *Bledsoe Co.*, 92 Cal. App. 145 [267 Pac. 887]. It was there said: "The only possible theory upon which contributory negligence may be chargeable against the automobile driver would be that he should have, as a reasonable person, seen the projecting sills in time to

have avoided the collision. This, of course, was a question of fact submitted to the jury, and is in no sense a question of law, as urged by appellant, and the finding of the jury against the appellant is conclusive here.''

In *Gammon* v. *Wales*, 115 Cal. App. 133 [300 Pac. 988], it was again held that whether or not an automobile driver is or is not guilty of contributory negligence in not seeing an obstruction ahead of him in time to avoid a collision is a question of fact for the jury. The language of the court there is as follows: ''Defendants contend that the plaintiff is guilty of contributory negligence as a matter of law in not seeing the truck in front of him. This was a question for the jury. The law is well settled that the question of contributory negligence, like that of negligence, is a question for the jury, and only when the facts are clear and undisputed, and when no other inference than that of negligence or contributory negligence can be drawn from such facts, is the court authorized to withdraw the question from the consideration of the jury. (Citing, *Nagle* v. *California So. R. R. Co.*, 88 Cal. 86 [25 Pac. 1106]; *Stephenson* v. *Southern Pacific Co.*, 102 Cal. 143 [34 Pac. 618–620, 36 Pac. 407]; *Zibbell* v. *Southern Pacific Co.*, 160 Cal. 237 [116 Pac. 513–515]; *Fike* v. *San Joaquin Light & Power Corp.*, 73 Cal. App. 712 [239 Pac. 344].)''

As to the duty of Hansen to guide the truck entirely off the paved portion of the highway, and the burden of excusing compliance with section 136 of the California Vehicle Act, we may also cite the case of *Giorgetti* v. *Wollaston*, 83 Cal. App. 358 [257 Pac. 109], where it is said: ''The defect in the headlights of the truck, which led respondents to stop was, as fairly appears from their testimony, due to a condition which developed a few minutes before the car was stopped, and was not caused by a lack of due care on their part; but the absence of lights either in front, or in the rear, rendered the operation of the truck, at the hour mentioned, unlawful, and it was the duty of the respondents to remove the same from the main traveled portion of the highway. . . . The failure of any person to perform a duty imposed upon him by law raises a presumption of negligence; and if such negligence proximately contributes to his injury, he cannot recover. (*McKune* v. *Santa Clara etc. Co.*, 110 Cal. 486 [42 Pac. 980]; *Berkovitz* v. *American*

*River Gravel Co.*, 191 Cal. 195 [215 Pac. 675]; *Shimoda* v. *Bundy*, 24 Cal. App. 675 [142 Pac. 109].) This presumption, however, is not conclusive, but must be overcome by evidence that the failure was excusable or justifiable under the circumstances and not inconsistent with the exercise of due care.''

Appellants cite the case of *Berlin* v. *Violett*, 129 Cal. App. 337 [18 Pac. (2d) 737], where it is said: "All drivers of vehicles on a public highway are required by law to keep a vigilant lookout ahead so as to avoid, if reasonably possible, a collision with any other vehicle or person lawfully upon such highway. Failure to keep such lookout, or failure to see what may be readily seen if the driver is looking, would constitute negligence as a matter of law.''

While approving what is here said, as a matter of abstract principle its application depends upon the circumstances surrounding the particular case under consideration. If the testimony is conflicting as to whether the driver of the vehicle did or did not keep such a lookout, and also whether, if he kept such a lookout, the obstacle in front could or could not have been readily seen is uncertain, then and in that case the question of whether the act of the driver of the vehicle did or did not amount to contributory negligence is a matter of fact for the jury.

As bearing upon the question of Hansen's negligence we may also cite the case of *Rath* v. *Bankston*, 101 Cal. App. 274 [281 Pac. 1081], where it is said: "Generally speaking, it is the duty of one driving a motor vehicle along a public highway to see that it is properly equipped so that it may be at all times controlled to the end that it may not be a menace to the safety of others or of their property. The law requires that such a vehicle be equipped with brakes adequate to its quick stopping when necessary for the safety of its occupants or of others, and it is equally essential that it be maintained in such a condition as to mechanical efficiency and fuel supply that it may not become a menace to, or an obstruction of, other traffic by stopping on the road. But if the person in charge of such vehicle has done all that can be reasonably expected of a person of ordinary prudence to see that has vehicle is in proper condition, and an unforeseen failure of a part of his equipment occurs, it does

not necessarily follow that he must be deemed guilty of negligence as a matter of law.''

In other words, all such questions are matters of fact for the jury, unless only one conclusion can be drawn from the testimony. As we have stated, the record in this case is entirely silent as to whether the driver of the truck had, at any time during his trip from San Francisco to Reno and back to the point of collision, made any inspection of his fuel supply, but was resting entirely upon the assumption that as he had been able to make the trip theretofore from San Francisco to Reno and back to North Sacramento before refueling, he could do so again. This entirely overlooks the different conditions of the highway upon which he was driving, the freight load which was being transported from San Francisco to Reno, and also leaves open the question of whether there were any appliances on the instrument-board of the truck indicating the fuel supply on hand.

In the case from which we have just quoted, the truck was equipped with a gauge indicating the gasoline supply on hand, which for some unexplained cause failed to indicate the lessening supply of gasoline, and the truck suddenly stopped without warning. Had the jury in this case found for the defendants on the theory that Williams was guilty of contributory negligence, then the cases cited in appellants' briefs would, of course, be controlling here, and such a verdict could readily be held supported by the testimony set out in the transcript. But having found the facts contrary to the appellants' contentions, the cases having to do with the contributory negligence of the driver of an automobile which collides with a standing truck are inapplicable.

Though argued by the respective parties, we find nothing in the record in relation to the alleged momentary interference with the vision of automobile drivers, caused by the arc light in front of Hasley's filling station, which could in anywise affect the determination of this cause, as 600 feet intervened between the place where the arc light is located and where the collision took place. Therefore, it is unnecessary to review the principles upon which the case of *Meads* v. *Deener,* 128 Cal. App. 328 [17 Pac. (2d) 198], and other cases relating to automobile drivers blinded by approaching lights or by sunlight, rely.

No other alleged errors being relied upon, and no question being made as to the award of damages, the judgment is affirmed.

Thompson, J., and Pullen, P. J., concurred.