[Civ. No. 8503.   Third Dist.   May 23, 1955.]

EDWARD T. SMITH, Appellant, v. W. H. WATTENBURG
et al., Respondents.

194

Partridge, O'Connell & Whitney and John P. Whitney for Appellant.

George L. Vargas, Alex. A. Garroway, McDougall & Fitzwilliam and Fitzwilliam & Memering for Respondents.

VAN DYKE, P. J.—Plaintiff brought this action to recover damages for injuries he suffered when the pickup truck he was driving collided with a dump truck operated by defendant Reinhart at a point where a logging truck, driven by defendant Kirby, was standing on the traveled portion of the highway. Plaintiff charged that the accident was caused by the concurring negligence of the driver of the logging truck and the driver of the dump truck. Plaintiff was traveling south on a two-lane road. At the point where the accident occurred the road was ascending and curved to the right for cars traveling upgrade. As plaintiff went up the grade he came upon the loaded logging truck standing squarely in his lane of travel. Although, as he came around the curve toward the logging truck, his view ahead was somewhat obscured by a cut bank and a tree which stood near the road, he did see the standing truck. He said he thought at first it was moving, and did not realize it was standing until he was within about 100 feet of it. He was then so close that he determined he could not stop without hitting the truck. He elected to cross over into the northbound traffic lane and go around. He said further that as he was executing this maneuver and when he had come out from behind the logging truck to where he could see along the northbound lane, he observed a dump truck coming downgrade. He then attempted to cross in front of the dump truck and go out on the shoulder of the road and thus escape the collision, but he was unable to do so. His vehicle and the dump truck collided almost head-on.

At the close of plaintiff's testimony the trial court denied motions for nonsuit made by all defendants. When all the evidence was in these motions for nonsuit were renewed and were granted. From the judgment entered upon the orders of nonsuit the plaintiff appeals.

We will first consider the propriety of the nonsuit order in favor of defendant Kirby, driver of the logging truck, and his employer. The first question posed is whether or not, from all the evidence, disregarding conflicts and adopting all favorable inferences and constructions, appellant made out a prima facie case of actionable negligent conduct toward

him. So considered, the evidence shows the following in addition to what we have stated: Appellant rounded the curve at about 45 miles per hour. No one warned him the truck was there and no warning flags or flares had been placed. Unaware the truck was not moving, he began to reduce the speed of his pickup. When he realized the truck was stopped he made a forceful application of his brakes in an attempt to stop. Almost instantly he realized he would be unable to do so in the remaining space. He then swerved his car into the northbound lane.

Section 582 of the Vehicle Code provides that:

"Upon any highway in unincorporated areas no person shall stop, park or leave standing any vehicle, whether attended or unattended, upon the main traveled portion of the highway when it is practicable to stop, park or so leave such vehicle off such part or portion of said highway but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle shall be available from a distance of 200 feet in each direction upon such highway. . . .

"This section shall not apply to the driver of any vehicle which is disabled in such a manner and to such extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle on the main traveled portion of a highway."

Concerning this section the Supreme Court said in *Thomson* v. *Bayless*, 24 Cal.2d 543, 546 [150 P.2d 413]:

". . . [T]he courts in the state have uniformly held for the past 12 years that a prima facie case of negligence is established under section 582 by the proof that the vehicle was left on the paved portion of the highway outside of a business or residential district and that the burden to show that it was not practicable to drive off the main traveled portion of the highway rests upon the operator of such vehicle."

In the cited case the parked vehicle was not disabled. However, the same rule applies if the excuse for stopping a vehicle on the traveled portion of the highway is claimed by the operator thereof to be the disablement of the vehicle to such extent that it is impossible to avoid obstructing the road. (*Barone* v. *Jones*, 77 Cal.App.2d 656, 662 [176 P.2d 392, 177 P.2d 30].) Said the court in *Scoville* v. *Keglor*, 27 Cal.App.2d 17, 32 [80 P.2d 162]:

". . . While the general burden of proof continued with the plaintiffs yet it must be remembered, as said in *Casey* v.

*Gritsch,* 1 Cal.App.2d 206, 211 [36 P.2d 696], quoting from *Watt* v. *Associated Oil Co.,* 123 Ore. 50 [260 P. 1012], that:

" 'One who parks his automobile upon the public traveled part of a highway is prima facie a violator of the law, and it is incumbent upon him to show affirmatively that it was necessary for him to so park it at that time and place. It is not the duty of a party injured in a collision under such circumstances to show that such parking was not necessary, but for the other party to bring himself within the exception provided by the statute.' "

Applying the foregoing rules to the facts it results that appellant made out a prima facie case of negligence against Kirby and his employer and the burden passed to them to rebut that prima facie showing. We now turn to a consideration of the evidence in the record on which said defendants rely.

Kirby testified that he entered the upgrade curve at a speed of 25-30 miles per hour; that he began to reduce his gears to climb the grade and had reduced the speed to between 3 and 5 miles per hour when the motor started sputtering and stopped within 20 or 30 feet, and could not be started. He said the engine had operated properly up to that time and he had never had mechanical difficulty with the truck; that he knew he was stopped in a dangerous place and prepared to put out flare pots, which he carried, to warn oncoming cars of the hazard but did not have time before this accident occurred since he had been there only a few minutes. This testimony as to the length of time his truck was stopped before the accident occurred was disputed. Other evidence indicated that he had been there some 20 minutes before appellant's vehicle came along. Kirby's employer testified that he came to the scene, examined the motor of the logging truck and after a brief check found that the stoppage was caused by a clogged fuel pump screen; that later investigation showed two handfuls of wadded paper were in the gasoline tank. He gave it as his opinion that this paper was the source of small fibers of paper that were on the screen of the fuel pump, shutting off the gas supply. He found the entire surface of the screen was clogged with these fibers. He said that this blocking of the screen by the fibers would come about gradually, ultimately stopping the motor for want of fuel.

We have said that from the fact that the logging truck was found standing in the lane of traffic a prima facie case of negligence against its operators was made out; that is, that

from these primary facts the trier of fact could infer the ultimate fact of negligence. The following matter quoted from *Blank* v. *Coffin*, 20 Cal.2d 457, 460-461 [126 P.2d 868], is pertinent:

"An inference is a conclusion as to the existence of a material fact that a jury may properly draw from the existence of certain primary facts. . . . It is not always possible for a party to a lawsuit to introduce evidence directly bearing upon the existence of a fact that he is attempting to prove. The evidence available to him may serve only to establish the existence of certain primary facts that are logically connected with the material fact. If a jury can reasonably infer from these primary facts that the material fact exists, the party has introduced sufficient evidence to entitle him to have the jury decide the issue. The jury is not compelled to draw the inference, however, even in the absence of contrary evidence and may refuse to do so. Whether a particular inference can be drawn from certain evidence is a question of law, but whether the inference shall be drawn, in any given case, is a question of fact for the jury. . . .

"Usually, the opposing party introduces evidence as to the nonexistence of the fact in issue, and the jury must then determine the existence or nonexistence of the fact from all the evidence before it. If the evidence contrary to the existence of the fact is clear, positive, uncontradicted, and of such a nature that it can not rationally be disbelieved, the court must instruct the jury that the nonexistence of the fact has been established as a matter of law. . . . The jury, however, is the sole judge of the credibility of the witnesses . . . and is free to disbelieve them even though they are uncontradicted if there is any rational ground for doing so. . . . In most cases, therefore, the jury is free to disbelieve the evidence as to the nonexistence of the fact and to find that it does exist on the basis of the inference.

"There are many reasons why a jury may refuse to believe a witness. Section 1847 of the Code of Civil Procedure provides: 'A witness is presumed to speak the truth. This presumption, however, may be repelled by the manner in which he testifies, by the character of his testimony, or by evidence affecting his character for truth, honesty, or integrity, or his motives, or by contradictory evidence; and the jury are the exclusive judges of his credibility.' Section 2061(3) of the Code of Civil Procedure provides: 'That a witness false in one part of his testimony is to be distrusted

in others.' In passing on the credibility of a witness, the jury is entitled to consider his interest in the result of the case.''

It may be conceded that if Kirby's testimony were accepted at face value it would free him from the inference of negligence, but it was not for the trial court, sitting with a jury, and it is not for this court on appeal to determine that Kirby's testimony must be so accepted. Kirby was operating a logging truck loaded with logs. Such a truck with its load constitutes a ponderous object. If it becomes disabled and stops it may well be under such circumstances that it will have to be left blocking a lane of travel. One operating such a vehicle with its load is bound to use care, commensurate with the proper handling of the vehicle, to anticipate and to prevent mechanical failure of which he has adequate warning. If he has such warning he is obliged to take such precautions as are available to prevent such failure. Kirby said that he had no warning whatever, that the truck appeared to be in good condition and he had had no trouble with it. But the jury could infer from the testimony of his employer that such was not the case and that in fact the clogging of the carburetor screen had been a slow process such as would give adequate warning that the truck's motor was losing its power, and might lose it to such an extent as to stop suddenly under the strain of the load. The jury therefore was not compelled to accept Kirby's statement that he had no warning of an impending mechanical failure, and could conclude that, on the contrary, he had such warning and negligently entered the upgrade with failing motor.

There is also the further consideration that arises from the duty placed upon the driver of a disabled vehicle which is stopped in a traffic lane, to do all that is required of him by prudence or by statute to obviate as far as possible the danger flowing from the presence of a stationary vehicle on a traveled highway. (Blashfield's Cyc. of Automobile Law and Practice, § 1195.) From the testimony that the truck had been stationary for a time amply sufficient for Kirby to have sent his helper back to warn approaching cars or to have placed flares with which his truck was equipped and his failure to do either, the jury could infer that Kirby was negligent in failing to give warning, and that this failure was a proximate cause of the collision of appellant's automobile with the dump truck. True, Kirby testified he had no time to give warning and in this his helper corroborated him. But this testimony, given by two interested witnesses, was ma-

terially in conflict with that of two witnesses who passed the standing truck before appellant arrived. The jury could have inferred that Kirby did have ample time to give warning. On the whole record it is clear that appellant could not be nonsuited as against Kirby and his employer upon any theory that he had not made out a sufficient prima facie case of negligent conduct for the jury to pass on.

It is argued that the nonsuit can be justified as to Kirby and his employer and also as to the owner and operator of the dump truck upon the ground that appellant was guilty of contributory negligence as a matter of law. This contention cannot be upheld upon the record here. Taking as true, as we must here, the testimony of appellant which we have stated, it cannot be said that his conduct amounted to contributory negligence as a matter of law. The following language taken from *Doane* v. *Smith,* 63 Cal.App.2d 691, 697 [147 P.2d 650], where the factual situation was similar to that presented here is pertinent:

". . . It cannot be said as a matter of law that there is some definite distance from a parked vehicle at which an approaching driver must realize that the vehicle is standing still, in order to be free from negligence. No more can it be said upon the facts of this case that plaintiff was negligent as a matter of law in failing to realize that the truck was standing still until he was within about 100 feet of it. It must be remembered that automobile drivers have the right to anticipate that standing vehicles ahead of them will be parked off the highway, if it is practicable to so park them, and the right to act upon that assumption until there are reasonable grounds for believing that there is some vehicle ahead that is not so parked."

Whether or not appellant was contributorily negligent was for the jury.

We have next to consider the issues posed by the granting of the nonsuit in favor of respondent Reinhart, the driver of the dump truck. He was coming down the grade toward the logging truck, traveling in the northbound lane and the case against him depends largely, if not entirely, upon the inferences that can be drawn from his own testimony as to his actions. Taking this testimony as strongly against him as it can be taken it amounts to the following: He was an experienced truck driver and familiar with the operation of the truck he was driving; he was familiar with the road in the vicinity of the accident; he had about 5½ tons of gravel on

his truck and was driving down a 5½ per cent grade at a speed of 35 miles per hour when he saw the logging truck from 200 to 300 feet ahead of him. He saw it was stopped on the curve and that the southbound lane was entirely blocked. He realized that the situation was a dangerous one. A rule of his superior, which he knew and for which he knew the reasons, directed him in such a situation to slow down and pull as far to the right as he could. He slowed down to 30 miles per hour and continued downgrade with his left wheels 3½ feet from the center line and his right wheels close to the edge of the pavement. Opposite the standing logging truck there was a firm, gently sloping shoulder 8 to 9 feet in width. He did not go out upon this shoulder. He saw appellant's pickup approaching at a distance of 90 to 200 feet and he then attempted to stop, but his momentum carried him to and at least partly, if not entirely, past the logging truck, at which point his dump truck collided with appellant's pickup, driving it back down the hill about 100 feet.

We are unable to agree that the foregoing facts are such that a finding of the jury that he was negligent in not taking greater precautions when he saw and realized the danger of the situation ahead of him, and that such failure contributed to the accident, would not be sufficiently supported. It could be inferred that had he brought his vehicle to a point where it was well under control, in anticipation that an approaching driver might, in an emergency, come over into the northbound lane, he would have been in a position when this happened to have either stopped, thus permitting that driver to get onto the shoulder and out of his way, or to have pulled further over, thus yielding a passage between the two vehicles. Certainly the case against him is weak, but under the circumstances we hold it was not a case where the question of negligence could be resolved in his favor as a matter of law and that such a resolution should have been left to the jury.

The judgment is reversed as to all respondents.

Peek, J., and Schottky, J., concurred.