[Civ. No. 4945. Third Appellate District.—July 14, 1934.]

W. R. SMITH, Respondent, v. PACIFIC GREYHOUND CORPORATION (a Corporation) et al., Appellants.

C. C. McDonald and Gerald N. Desmond for Appellants.

Huston, Huston & Huston, Jesse W. Carter and Glenn D. Newton for Respondent.

PULLEN, P. J.—This is an appeal by defendants from a judgment entered on a verdict of a jury awarding damages for personal injuries and for medical, surgical and hospital treatment suffered and incurred by plaintiff as the result of an accident which occurred about midnight on the eighth day of December, 1931, on the Pacific highway a few miles south of the city of Woodland, when an automobile stage owned by defendant Pacific Greyhound Corporation and operated by defendant Irwin collided with plaintiff.

On the day in question plaintiff was taking a load of Christmas trees from Castella to San Francisco, and accompanying him on the trip were his son, James E. Smith, nineteen years of age, and Ray Hunter, eighteen years of age. In the afternoon of that day the two boys left Castella in plaintiff's truck with the Christmas trees, plaintiff following in his Dodge sedan. When plaintiff left home the Dodge was apparently in good running order. Before reaching Redding, however, he observed that the generator was not operating properly, and stopped at a garage in Redding, where he learned there was something wrong with the generator which could not be immediately repaired, so he had a rent battery installed. Upon reaching Willows plaintiff again observed that the battery was not operating properly and he then purchased and installed a new battery. From Willows he proceeded on his way, arriving at Woodland about 11:45 P. M., where the three stopped for supper. A few minutes after midnight, as they left the restaurant, preparatory to resuming their journey, they observed a stage of the Pacific Greyhound driving into the main depot in Woodland. Plaintiff proceeded without difficulty until he crossed the railroad track about four miles south of Wood-

land. As he hit the crossing plaintiff observed his lights to flicker. After crossing the railroad the lights gave him no further trouble and plaintiff proceeded three or four miles farther, when, without warning, the lights suddenly went out. The night was dark and foggy and plaintiff was unable to see much, if anything, but turned his car to the right to get off the pavement and after getting the two right wheels on the graveled shoulder of the highway, allowed the car to coast eight or ten feet until it came to a stop. At the time the lights went out the Dodge was 100 to 125 feet ahead of the truck. James Smith, his son, driving the truck, saw the lights go out and observed the Dodge drawing to the right. He passed the Dodge about 12 or 14 feet and brought his truck to a stop, and went back to see if he could be of any assistance to his father. When he reached the front of the Dodge his father was just getting out of the car. At that time the son saw the lights of the stage approaching at a considerable distance to the rear. Plaintiff also observed the headlights of the approaching car and told his son to flag them. Plaintiff had just reached into the car for a box of matches when his son called, "Look out, Dad." Plaintiff jumped back, observing the approaching lights were not more than 4 to 6 feet behind the Dodge, and before he could move in any direction, the stage, driven by defendant Irwin, struck the Dodge. In the meantime plaintiff's son and Ray Hunter had run behind the Dodge to flag the stage. Smith, Jr., stayed about ten feet back of the Dodge and about 3 feet west of the white center line and waved his arms at the approaching stage, trying to flag it. Ray Hunter was about 12 feet back of the Dodge and about 3 feet inside the shoulder, where he waved his arms. From the time the lights of the Dodge went out until the collision a minute or a minute and a half had elapsed. When the stage struck, it ripped open the gasoline tank of the Dodge and the car burst into flames. Plaintiff was knocked down and rolled beneath the stage and was also covered with gasoline which burst into flames as he rolled along under the stage. As a result of the injuries caused by this collision he was, as already related, awarded damages by the jury.

Appellants contend that the finding of the jury that defendants were negligent is not supported by the evidence;

that plaintiff was guilty of contributory negligence and that the court misdirected the jury in certain particulars. It is, of course, too well established to require the citation of authorities that a reviewing court, in examining the sufficiency of the evidence to support a questioned finding, must accept as true all evidence tending to establish the correctness of the finding as made and every substantial conflict of the testimony is to be construed in favor thereof. All this court is required to do is to point out testimony which, if believed by the jury, would be sufficient to support the finding. With that in view, therefore, we will not attempt to narrate evidence which might lead to a contrary conclusion but direct our attention solely to the evidence adduced in behalf of plaintiff, for the purpose of determining whether or not such testimony, together with reasonable inferences to be drawn therefrom, are sufficient in weight and quality to justify the verdict of the jury.

James Smith, who testified he had driven a car for eight years and piloted an airplane for two years, estimated that the stage was traveling between 50 and 55 miles an hour at the time of the accident. Hunter testified the stage at that time was traveling approximately 50 miles an hour.

Appellants contend that respondent's witnesses would be unable to estimate the rate of speed on account of the fact that lights in a fog looked farther away and because of the fog the stage was much nearer to them than they realized. This was a matter to be determined by the jury. Physical facts also bear out the estimate of respondent in regard to the speed of the stage in that it appears that the Dodge was forced ahead some 12 to 15 feet until it struck the truck, crushing the Dodge between the two. James Smith testified that when he parked the truck he set the brakes and put the gears in reverse. Notwithstanding that fact, the truck was impelled over 100 feet from where it originally stood, across the graveled shoulder into a ditch, over a bank, through a wire fence and into a field. It also appears that the stage, to have reached the point of the accident, must have traveled 7 miles in approximately 8 minutes, or at a rate of speed in excess of 50 miles an hour. The night was dark and a heavy wet fog hung over the valley. The driver of the stage testified he was traveling 25 miles an hour and at that speed it would require 58 feet for him

to bring his car to a stop. He also testified he could not see more than 25 feet ahead of him at the time. However, the testimony of Smith, Jr., was that he was following the Dodge some 100 or 150 feet in the rear, and could see the Dodge at that distance and saw the lights flicker and go out, and could see the outline of the car in the darkness. The driver of the stage also testified that, owing to the wet and slippery condition of the highway he feared to apply the brakes lest he skid into the car in front of him. That being true, and assuming that the stage was operating at only a rate of speed of 25 miles an hour, the jury would be justified in finding that that rate was excessive, in view of the fact that the driver could see such a short distance ahead and that it would require such a distance to bring his stage to a stop.

█ It is not the absolute speed at which a car is being driven that determines whether or not it is being operated at a reckless rate, but the condition and circumstances of the highway at the time must be taken into consideration. (*Havens* v. *Loebel,* 103 Cal. App. 209 [284 Pac. 676].) If, therefore, the driver of the stage was traveling at a rate of speed at which he could not bring his vehicle to a stop within his range of vision, and the condition of the highway was such that his brakes could not be applied with adequate force lest the stage skid into the car ahead, the jury would have been justified in believing that even 25 miles an hour was excessive. (Sec. 113 [a], California Vehicle Act; Huddy's Automobile Law, vol. 3-4, p. 301.)

█ Appellants contend that the evidence shows that plaintiff was guilty of contributory negligence as a matter of law. Section 136 (a) of the California Vehicle Act provides:

"No person shall park or leave standing any vehicle whether attended or unattended upon the paved or improved or main traveled portion of any public highway, . . .

"The provisions of this subsection shall not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a public highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such vehicle in such position."

In interpreting this section this court, in *Silvey* v. *Harm*, 120 Cal. App. 561 [8 Pac. (2d) 570], has held: "The driver of a truck is not guilty of negligence if his machine is parked on the main traveled portion of the highway through no fault of his own. (*Rath* v. *Bankston*, 101 Cal. App. 274 [281 Pac. 1081].) If the automobile is disabled while it is traveling along a public highway so that it is impracticable or impossible to drive it off of the main traveled portion of the highway, the driver is not guilty of negligence in permitting it to remain there until by the exercise of reasonable diligence, it can be removed."

We are of the opinion that plaintiff comes under the exception set out in the last paragraph of section 136 (a) quoted above.

It would seem, also, that plaintiff exercised due care in regard to the supervision of his lights and battery. When he first discovered trouble with his car he stopped at Redding and installed a rent battery and was there informed that that installation would be sufficient to take him safely to San Francisco. In Willows he had the rent battery removed and there purchased a new battery. From that time until the lights flickered at the crossing south of Woodland he had no trouble. Then a short distance farther south, without warning, the lights went out and his engine stopped. He coasted along the shoulder of the highway and as far to the right thereof as he thought safe in the darkness until his car came to a stop, leaving 2½ to 3½ feet of the car extending on to the paved portion of the highway. He then alighted and proceeded to search for a light to examine the car, and in less than two minutes and before he could take any precaution to protect himself or others, he was struck by the oncoming stage.

It is apparent, therefore, that plaintiff was forced to park his car on the main traveled portion of the highway, owing to its disabled condition, and whether he was justified in so doing under all the circumstances of the case was properly submitted to the jury.

In answer to the contention of appellants that respondent was negligent in that he stood by the car as the stage bore down upon him, is likewise for the jury, as the case of *White* v. *Davis*, 105 Cal. App. 531 [284 Pac. 1086], held: "When the injured party fails to look at all, or looks

straight ahead without glancing at either side, or is in a position where he cannot see, or in other words, where he takes no precaution at all for his own safety, it is usually a question for the court. Where he looks but does not see an approaching automobile, or seeing one, erroneously misjudges its speed or distance, or for some other reason assumes he could avoid injury to himself, the question is usually one for the jury."

Appellants also claim that the trial court erred in instructing the jury on the doctrine of last clear chance. The principles of this doctrine are clearly set forth as follows in the case of *Girdner* v. *Union Oil Co.*, 216 Cal. 197 [13 Pac. (2d) 915]:

"The necessary elements, as deduced from the well considered cases, may be stated in substance as follows: that plaintiff has been negligent and, as a result thereof, is in a position of danger from which he cannot escape by the exercise of ordinary care; and this includes not only where it is physically impossible for him to escape, but also in cases where he is totally unaware of his danger, and for that reason unable to escape; that defendant has knowledge that the plaintiff is in such a situation, and knows, or in the exercise of ordinary care should know, that plaintiff cannot escape from such situation, and had the last clear chance to avoid the accident by exercising ordinary care and fails to exercise the same, and the accident results thereby, and plaintiff is injured as the proximate result of such failure."

Whether plaintiff was in a position of danger from which he could not escape was also a question of fact. Appellants assume that when the stage was 150 feet away plaintiff should have realized he occupied an exposed position and by the exercise of due care could have avoided the injury. However, merely to show that plaintiff knew of the existence of the instrumentality that subsequently caused his injury, without showing also that he then appreciated the peril, will not preclude his relying upon the doctrine of the last clear chance (20 R. C. L., p. 110), and such knowledge of the peril is to be established like any other fact. (20 R. C. L. 109; *Giraudi* v. *Electric Imp. Co.*, 107 Cal. 120 [40 Pac. 108, 48 Am. St. Rep. 114, 28 L. R. A. 596].) Under the facts of this case it cannot be said as a matter of law that the approach of an autostage under the circum-

stances present at the time of the injury to plaintiff would lead plaintiff to believe he was in a position of peril. He himself had been driving his car through the fog but a few moments before and he knew with only two headlights on his car he had been able to see from 100 to 200 feet in front of him, and he could then see the headlights and fog lights of the approaching stage casting their beams along the highway. He also knew that approximately two-thirds of the width of the highway was unobstructed on his left, and that he had sent the two boys back of the car to warn the oncoming stage. The jury had a right to disbelieve the driver of the stage when he testified that he could see only about 25 feet in front, and just before the accident he was traveling not over three miles an hour, and feared to apply the air-brakes with which the stage was equipped, lest the wheels would lock and cause the stage to skid. The driver previously testified that a car, equipped as this stage was with six good tires, had practically the same gripping power upon a wet highway that it would have upon a highway in its normal condition. It was therefore a question of fact for the jury to determine when the actual peril to plaintiff arose. The jury by their verdict having held that it did not arise until the instant before the collision, that verdict will be binding upon this court.

Appellants also complain of an instruction given on the doctrine of last clear chance; the instruction complained of reads in part as follows: ''You are instructed that if you find from the evidence even though plaintiff in this case had negligently placed himself in a careless position, and that the defendant S. G. Irwin, the driver of the stage, by the exercise of reasonable care, could have seen and should have seen the perilous situation of plaintiff in time to have avoided injuring him by the exercising of reasonable care . . . ''

It is true that the instruction complained of omitted to add the words ''did see'' after the words ''should have seen'', nevertheless other instructions correctly set forth the principle of law involved. It is a well-settled rule that instructions on a particular subject must be construed as a whole (24 Cal. Jur., p. 857), and in other instructions given by the court the jury were instructed, '' . . . yet, if thereafter, defendants, seeing the position in which he was,

had an opportunity . . . ", and also " . . . that the defendant driver is aware of his (plaintiff's) dangerous situation under such circumstances . . . "

At most it can be said that the instruction complained of did not contain all the necessary elements of last clear chance doctrine, but it has often been stated that all the law applicable to a case need not be stated in a single instruction. (*People* v. *Mohammed*, 189 Cal. 429 [208 Pac. 963].)

It has also been held that if an instruction is desired by defendant more elaborate or complete upon the statement of the doctrine involved, it is the duty of defendant to prepare and present such fuller or more accurate instructions on the subject. (*Townsend* v. *Butterfield*, 168 Cal. 564 [143 Pac. 760]; *Galwey* v. *Pacific Auto Stages*, 96 Cal. App. 169 [273 Pac. 866].)

Appellants also claim prejudicial error in an instruction telling the jury that at the time of the accident the speed limit at the place where the accident occurred was 45 miles per hour and that it was a violation of the laws of the state of California for a motor vehicle to travel upon the highway at said time at a greater rate of speed than 45 miles an hour. The jury were nowhere informed in this instruction that if defendants violated such law at the time and place of the accident that such violation would constitute negligence. The instruction was therefore only a declaration of an abstract principle of law and a truism or general statement which had no specific bearing upon the case at issue.

We find no further objections which require consideration and the judgment appealed from is affirmed.

Plummer, J., and Thompson, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 6, 1934.