[Civ. No. 2043. Fourth Appellate District.—June 6, 1938.]

MARGARET W. SCOVILLE, as Administratrix, etc., et al., Respondents, v. ERVIN KEGLOR et al., Appellants.

Lasher B. Gallagher for Appellants.

Harry W. Horton for Respondents.

HAINES, J., *pro tem.*—At 3 o'clock, or thereabouts, in the morning of May 3, 1934, defendant and appellant Keglor

had been driving a Chevrolet truck and trailer in a westerly direction on the 20-foot-wide state highway from Yuma toward Holtville, in Imperial County, through the desert. The truck and trailer belonged to defendant and appellant Hamilton, who had, however, leased them to defendant and appellant Universal Interstate Freight Lines, a corporation, and they were being used to transport a cargo of cotton as a part of the corporation's business, but under the direction and control of Hamilton who accompanied the truck. The body of the trailer was eight feet wide and between the outer edges of the dual tires at its rear the distance was eight feet five inches. Keglor was Hamilton's employee. Hamilton had personally driven the truck that night from Phoenix to Yuma and then turned the driving over to Keglor and himself lain down on the cargo and gone to sleep. Trouble having developed with the lights, Keglor stopped on the right side of the highway, and while the truck was stationary and unlighted, or its lights too dim to be seen, J. M. Scoville, originally one of the plaintiffs in the present action, together with plaintiff and respondent Margaret W. Scoville, his wife, and three other passengers, also proceeding westerly on the highway in a Dodge car driven by Mr. Scoville but owned by his wife, collided with the trailer, then entirely unlighted, by striking it in the rear, with resulting injuries to both of the Scovilles as well as to the Dodge car.

The present action is one originally brought by the Scovilles in which they sought to recover from the appellants damages for the injuries so sustained. The damages asked were, in detail, on account of the personal injuries to Mr. Scoville, $25,000 general damages; $5,000 for loss of time and impairment of his ability to earn a livelihood; $10,000 for expenses of treatment incurred and to be incurred; on account of the personal injuries to Mrs. Scoville, $5,000 general damages, plus $5,000 more for nervous shock and medical expenses, which latter two items are grouped together; and also $1,000 for injury to the Dodge car. After answer filed by appellants the case was brought to trial before the court.

The testimony of appellant Keglor, the truck driver, was to the effect that the battery supplying his lights had appeared to be in good condition and until immediately before the accident no trouble with the lights had been experienced; but that on the road from Yuma toward Holtville he had gotten a short distance beyond a station known as Grey's Wells

when his lights suddenly began to dim; that after beginning to notice this he went on about 200 feet and then stopped; that by that time the lights were so far gone that there was practically no reflected light on the road ahead of him; that, upon stopping, he picked up a flashlight that he had with him in the cab, got out and noticed respondents' automobile approaching from about 300 feet to the rear (east); that he stood out near the white streak in the middle of the highway abreast the front of his truck for about five seconds swinging his flashlight back and forth and then dodged in front of his truck to avoid respondents' oncoming automobile. He said that there were flares in his tool box between the truck and the trailer. The box was closed and he made no attempt to get them out. To have used them it would have been necessary to get them out, light them and set them in the highway back of the trailer.

Appellant Hamilton testified that the battery above referred to was only about four months old and in good condition; that its hydrometer reading was from time to time checked; also that after the collision he found that the truck was as near to its right side of the paved highway as it was practicable to drive it. The evidence is that the highway was covered with a new pavement of black material; that it is impracticable to drive a truck off it on either side because the surface of the surrounding country is desert sand, from which it is not practicable to pull back to and upon the highway. It is not claimed that there was any other obstacle to the truck's proceeding at the time it stopped than the circumstance that its lights had given out.

Mr. Scoville testified that he had driven the Dodge car from Tucson; that it was in excellent condition and had perfect brakes; that its lights had been adjusted the day before leaving Tucson and were burning at the time of the collision; that there was nothing ahead to blind him and his headlights would enable him to see an object as large as a human being a hundred yards ahead of his car. There were three people in the back seat of his car, Mrs. Scoville and two gentlemen. A Mrs. Villaescusa, wife of one of these gentlemen was sitting at the witness' right on the front seat. Scoville went on: "We were driving along about 35 miles an hour. I saw a car coming towards us, as I remember it, probably 100 or 150 yards ahead, and I slowed up a little bit. The next thing I

knew we hit something . . . ''. Proceeding, he testified further that he had his eyes ahead on the road and saw nothing of the truck and trailer until the collision. It was still dark. According to Scoville he could have stopped his car within twenty feet or less. He was not blinded by the lights of the car which was approaching from the west so as to be unable to see at all. He had reached a place probably ten or fifteen yards from the point of impact with the trailer when the headlights of the approaching auto had a material effect on his ability to see ahead.

Mrs. Scoville and Mr. and Mrs. Villaescusa all testified at the trial. Their testimony is in general in line with Mr. Scoville's. All say that they were awake when the accident occurred. Mr. Villaescusa agrees that the Dodge car was going at about 35 miles an hour, and corroborates Scoville's statement that they were passed by a car going east prior to the collision. All of these witnesses agree that they saw no flashlight signal such as Keglor claims to have given. The testimony appears to be that the trailer was of a whitish color blending easily with the color of the desert landscape. The night was a clear one.

We shall not take the space to detail the evidence with respect to the injuries sustained or other elements of damage claimed as no point is made that the awards are excessive.

After the conclusion of the evidence the court entered on December 1, 1936, a minute as follows:

''The above entitled cause having heretofore been tried before this court and taken under submission thereby at this day the court grants judgment to the plaintiffs in the amount of $4997.00, together with costs of suit.''

On December 17, 1936, J. M. Scoville died. Thereafter, on April 16, 1937, the court made an order reciting the fact that his death had been suggested to it and directing that its findings and judgment be made *nunc pro tunc* as of December 1, 1936. Findings, dated as of that date, were on April 16, 1937, filed accordingly, and a judgment also dated as of December 1, 1936, purporting to run in favor of both the original plaintiffs was entered on April 17, 1937. From this judgment the present appeal was taken on April 20, 1937.

A week later, that is on April 27, 1937, the trial court made an order undertaking to substitute for the decedent, as a party plaintiff, the said Margaret W. Scoville, who had meanwhile

been appointed administratrix of his estate in her capacity as such administratrix. On May 10, 1938, she was as such administratrix substituted for him by this court as a respondent.

On appellants' behalf it is now urged (a) that the trial court was without authority to make its findings and enter its judgment *nunc pro tunc* and that the action as to J. M. Scoville abated with his death; (b) that the court erred in failing to find upon material issues; (c) that the findings did not support the judgment; (d) that no negligence on appellants' part was shown; and (e) that the decedent, J. M. Scoville, was himself guilty as a matter of law of negligence that proximately contributed to his injuries.

■ That the court, had it taken the proper course for doing so, had the authority to make its findings and enter its judgment *nunc pro tunc* as of December 1, 1936, we have no doubt. The principles governing such action have been elaborately discussed in *Fox* v. *Hale & Norcross S. M. Co.*, 108 Cal. 478 [41 Pac. 328], *Leavitt* v. *Gibson,* 3 Cal. (2d) 90 [43 Pac. (2d) 1091], and *Norton* v. *City of Pomona,* 5 Cal. (2d) 54 [53 Pac. (2d) 952]. As is said in *Fox* v. *Hale & Norcross S. M. Co., supra* (p. 480):

"One class of the cases in which this authority may be exercised, says Mr. Freeman, comprises those 'actions in which no judgments have ever been rendered, but which are, so far as the suitors can make them, in condition for the rendition of final judgments'."

Here, though no findings had yet been filed at the time of Scoville's death, the court had verbally rendered its decision, and a minute thereof had been entered in which there was stated the aggregate amount of the award. As was further said in *Fox* v. *Hale & Norcross S. M. Co.* (*supra,* pp. 481, 482):

"If, as is provided by sections 632 and 633 of the Code of Civil Procedure, the making and filing of findings of fact is essential to its decision, the court has the same authority to order those findings to be filed *nunc pro tunc* as it has to order the judgment thereon to be so entered. . . . The decision which the parties have invoked the court to make is not necessarily the statutory and technical 'decision' referred to in section 633 of the Code of Civil Procedure, but is the final determination of the rights of the parties, and includes every step or act of the court which is requisite to a final judgment

upon their rights. The rights of the parties are not to be prejudiced by the delay of the court in respect to any of these acts or proceedings, and the court is authorized to direct the making or filing of its findings of fact and conclusions of law, as well as the entry of a judgment thereon, *nunc pro tunc* as of such date as will preserve these rights.''

In *Leavitt* v. *Gibson, supra,* the case had been fully tried, the evidence concluded, and an order been made allowing the plaintiffs certain time to file an opening brief, the defendant certain time to answer it and the plaintiffs certain time to reply, the case then to stand submitted. The parties had respectively taken more time than the order contemplated in which to file their briefs but all save the plaintiffs' reply brief were on file, and the plaintiffs had exceeded the time allowed them in which to file that, but it was not yet on file when one of the defendants died. The court held that, notwithstanding that at the time of his death the case was not actually under submission, yet, the situation being that the court might have taken it under submission and decided it without permitting the delayed final brief to be filed, no reason existed why it could not file its findings and enter its judgment as of the date prior to the decedent's death when the evidence was concluded, and its action in doing so was upheld.

In *Norton* v. *City of Pomona, supra,* page 62, in sustaining the making of findings and entry of a judgment *nunc pro tunc,* as of a date prior to a plaintiff's death, where the case had been submitted on briefs, and the trial court had reached its conclusion and entered a ''minute order for judgment'' in a certain amount in plaintiff's favor, but had not actually signed or filed any findings before he died, it was (p. 62) said:

''The power to enter judgments *nunc pro tunc* is inherent in the courts. Where the party is not at fault, the determinative consideration moving the court is whether or not the action at the death of the party was ready for rendition of final judgment. When the state of the record or the minutes kept by the court or clerk show that a suitor was entitled to a particular judgment but that the judgment was not entered when it might have been, such judgment may subsequently be entered so as to relate back to the time when it should have been entered, providing the delay was not occasioned by the party applying. Such an order should be

granted or refused as justice may require in view of the circumstances of a particular case." (Citing *Estate of Pillsbury,* 175 Cal. 454 [166 Pac. 11, 3 A. L. R. 1396].)

All of the cases above referred to were grounded upon torts. The two first mentioned, however, *Fox* v. *Hale & Norcross S. M. Co.* and *Leavitt* v. *Gibson, supra,* involved fraud committed in dealing in real estate where the causes of action, in any event, would have survived the decedent's death. In *Estate of Pillsbury, supra,* however, and *Norton* v. *City of Pomona, supra,* what were involved were purely personal torts in which the cause of action was only saved by the power to make the findings and enter the judgment *nunc pro tunc* as of a date prior to the decedent's death. Such is the situation in the instant case.

It is claimed, indeed, that respondents' counsel were dilatory in the time taken in preparing their findings. The trial court, however, determined otherwise, and, that being a matter which it was its province to decide, we would only be called upon to review an abuse of its discretion. We find no such abuse here.

A different and more serious question is raised in the instant case by the circumstance that, on April 16, 1937, and April 17, 1937, the respective dates on which the *nunc pro tunc* findings were actually filed and the *nunc pro tunc* judgment actually entered, no order had as yet been made in the trial court substituting Mrs. Scoville as administratrix of her husband's estate for him. To appreciate the bearing of this question reference must be had to the case of *De Leonis* v. *Walsh,* 140 Cal. 175 [73 Pac. 813]. One Etchepare, who had been a defendant in that case, died on June 7, 1901, after the case had been submitted for decision. On June 11, 1901, the findings were filed. On October 10, 1901, Etchepare's administrator was substituted for him as a party defendant by the trial court. The judgment was filed on October 14, 1901, and entered on October 16, 1901. Both findings and judgment contained a direction that they be respectively filed and entered *nunc pro tunc* as of June 3, 1901. Notice of appeal was served and filed on December 12, 1901. The statute forbade consideration of the question whether the evidence was sufficient to sustain the findings unless the appeal were taken within sixty days after the filing of the findings of fact and conclusions of law, which constituted the decision of the court.

It was in substance said that since the power of the court to render a *nunc pro tunc* decision and judgment is one "to be exercised only for the purpose of doing justice between the parties . . . the exercise of such power will never be allowed to have the effect of depriving the representatives and successors of the deceased defendant of the right to a review of the decision by the appellate court in the usual manner, or of shortening the time within which proceedings for such review may ordinarily be instituted", and that "the time within which such proceedings for review may be instituted cannot commence to run until the decision is actually rendered,—i. e., until the findings are actually filed,—regardless of the day as of which they are filed".

The court then said:

"If in this case the findings had been properly filed on July 11, 1901, the authorities would compel us to hold that judgment was actually rendered on that day, and that the appeal was not taken in time to allow a review of the evidence. But that date also must be disregarded, we are satisfied, for the reason that at that time there had been no substitution of any representative of the deceased. The defendant having died, the court could, on motion, allow the action to be continued against his representative (Code Civ. Proc., sec. 385), but it could regularly take no action in the case until there was a substitution of someone to defend the action, especially as the death of the defendant had been suggested to it. The rendition of judgment *nunc pro tunc* in *Fox* v. *Hale & Norcross S. M. Co.*, 108 Cal. 478 [41 Pac. 328], was made after such substitution and on notice. Until such substitution was had no judgment could legally be rendered, and, so far as the time of rendition of judgment is concerned, the case stands precisely as if no findings were ever filed. The filing of the judgment on October 14, 1901, and its entry on October 16, 1901, were the first steps legally taken by the court after the substitution had been made, and for all the purposes of the appeal the judgment can be considered as rendered not earlier than October 14, 1901. The appeal taken on December 12, 1901, was therefore taken within sixty days after the rendition of judgment."

Planting themselves on this language appellants now contend that since, when the findings in the instant case were filed, that is on April 16, 1937, and when the judgment was

entered, that is on April 17, 1937, no substitution for J. M. Scoville of his administratrix having yet been made in the trial court, both the findings and judgment were ineffectual in so far as they were in the decedent's favor.

We are unable, in view of the Supreme Court's language in *De Leonis* v. *Walsh, supra,* to avoid the conclusion that the trial court erred in undertaking to file its findings of fact and conclusions of law and to enter its judgment before making an order of substitution of the administratrix of the estate of J. M. Scoville for that plaintiff. In so far as the interest of the decedent was concerned there was at the date when the findings of fact and conclusions of law were actually filed and the judgment entered no plaintiff before the court. To be sure, *after* the findings of fact and conclusions of law should be properly filed and the judgment properly entered, they would be treated by the law for the purpose of avoiding the lapsing of the cause of action as having been made as of the date to which it was provided that, *nunc pro tunc,* they should relate. But if when they were respectively filed and entered in fact there was as to the decedent's interest no plaintiff before the court the defect would appear to us to go to the jurisdiction to file and enter them.

What has just been said, however, goes only to the making of the *nunc pro tunc* findings and the entry of judgment thereon in so far as such findings and judgment were in favor of J. M. Scoville, or in favor of the community consisting of the two original plaintiffs. As of December 1, 1936, that community existed and the right to manage the community property was in J. M. Scoville. So far as any judgment to which Margaret W. Scoville was, in her personal capacity, entitled, was concerned, the court's right to enter it was manifestly not interrupted by her husband's death. Both for that reason and also as a basis for deciding what ought to be done with respect to the interest of J. M. Scoville in the case, we proceed to examine the further questions raised by the appeal. The trial court's finding (No. 7) on the subject of damages was as follows:

"That as the direct and proximate cause of the said negligence on the part of said Keglor, the said Dodge Sedan of the plaintiff Margaret Scoville was demolished to her damage in the sum of Six Hundred Dollars ($600.00) ; and the plaintiff Margaret Scoville suffered lacerations and abrasions and

bruises and pain therefrom and required and received medical attention; and the plaintiff J. M. Scoville received lacerations, broken bones in the left leg, broken ribs, a collapse of the right lung and bruises and other bodily injuries and required and received medical attention and hospitalization and suffered loss of salary until December, 1934, in the sum of One Hundred and Sixty Dollars ($160.00) per month; all to the damage of the plaintiffs in the sum of Four Thousand Nine Hundred Ninety-seven Dollars ($4,997.00).''

▮ Judgment, however, was, on the findings entered in favor of J. M. Scoville and Margaret W. Scoville together for the aggregate lump sum of $4,997. The findings do segregate out the $600 for demolition of the Dodge car, which is the only item that we can distinctly say was separate property of Mrs. Scoville. All general damages for personal injuries to either spouse were, of course, community property. (Civ. Code, sec. 161a; In re Strand, 123 Cal. App. 170, 171 [11 Pac. (2d) 89].) That also is true of the damages for loss of time and impairment of the husband's earning capacity. It is presumably true also of the expenses incurred by either spouse in the treatment of his or her injuries, in the absence of allegations that his or her separate estate was in some manner specially obligated for their payment. ▮ In support of the action of the trial court, then, we can reasonably treat the findings as having so far segregated the items that there is no confusion with respect to the portion of the award which is separate property and the portion thereof which is community property. ▮ There is, however, a failure to segregate from each other various items awarded in response to causes of action which are community property. Since the loss of salary of J. M. Scoville is found to have amounted to $160 per month for the period between the date of the accident and the beginning of December, 1934, and that is certain which can be made certain, it would be possible to ascertain the portion of the award attributable to that item of special damage. Except, however, for the damage awarded for destruction of the automobile and this last-mentioned item, everything else, that is general damages for personal injuries to each of the spouses and special damages for the expense of medical and other attention to the same, are all lumped together and included with the two items just referred to, as specifically mentioned, in the aggregate total of $4,997. For

the most part this confusion did not exist in the complaint, although a portion of the claim made for personal injuries to Mrs. Scoville was therein grouped with the medical expense claimed for attention to her injuries.

It was said in *Klein* v. *Milne,* 198 Cal. 71, 76 [243 Pac. 420], that:

"Where a complainant or cross-complainant does not in his pleading rely upon a general averment of damages, but pleads both general and special damages and particularizes the items wherein each consists, and where the defendant or cross-defendants put these specifically in issue, they are entitled to special findings upon the issues as thus presented in order that they may point out the precise errors of the trial court upon motion for a new trial and upon appeal." (Citing *Franklin* v. *Franklin,* 140 Cal. 607, 609 [74 Pac. 155], and *Frascona* v. *Los Angeles Ry. Corp.,* 48 Cal. App. 135 [191 Pac. 968].)

The rule thus laid down was reiterated in *James* v. *Haley,* 212 Cal. 142, 146, 147 [297 Pac. 920]. (See, also, *Miller & Lux Inc.* v. *Tulare Lake etc. Dist.,* 219 Cal. 41, 46 [25 Pac. (2d) 451], and *Cargnani* v. *Cargnani,* 16 Cal. App. 96, 99 [116 Pac. 306].)

It is manifest that the court's decision to some extent disregarded this rule. ██ It does not in all cases follow that errors of this description are prejudicial to the losing party. It frequently happens, indeed, that a judgment *in solido* in favor of two parties plaintiff, is for some reason or other not prejudicial to a defendant. (*Meek* v. *Pacific El. Ry. Co.,* 175 Cal. 53 [164 Pac. 1117] ; *Fairchild* v. *Bay Point & C. Ry. Co.,* 22 Cal. App. 328, 330 [134 Pac. 338] ; *De Armen* v. *Connelly,* 134 Cal. App. 173, 181 [25 Pac. (2d) 24].) Segregation is, in some circumstances, said to have been no concern of the losing party and therefore no reason for the reversal of a judgment. In the instant case, however, where the presence of the husband, who as of December 1, 1936, the date to which the *nunc pro tunc* judgment was made to relate back, and who as of that date had the management of the community property, was necessarily essential to the entry of a judgment in favor of the community, and where, as we have hereinbefore held to be the case here, there was, for some reason, want of jurisdiction to enter the *nunc pro tunc* judgment as to him, it seems manifest that a judgment combining *in solido*

such void judgment as to him with a judgment otherwise good in favor of his wife, as to separate property of hers, can, as now entered, hardly stand.

The next point made for appellants that the findings do not support the judgment is without merit and we will not pursue it.

It is, however, seriously claimed that the evidence is insufficient to support any finding of negligence on the part of appellants. In ordinary circumstances it would have been a violation of subsection a of section 136 of the California Vehicle Act as in force when the collision occurred for appellants to have left their truck and trailer standing on the highway inasmuch as there was not a clear and unobstructed width of not less than fifteen feet on the highway opposite the standing vehicle left for the free passage of other vehicles thereon. The inhibitions of this statute, however, are subject to an exception, as follows:

"The provisions of this subsection shall not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a public highway in such manner and to such an extent that it is impossible to avoid stopping and temporarily leaving such vehicle in such position."

It has frequently been held that where a vehicle is to such an extent disabled that it is physically impossible to move it, it is not, in itself, negligence as a matter of law to leave it upon the main traveled portion of a highway until it is reasonably practicable to remove it. (*Rath* v. *Bankston,* 101 Cal. App. 274 [281 Pac. 1081]; *Silvey* v. *Harm,* 120 Cal. App. 561, 568 [8 Pac. (2d) 570]; *Fleming* v. *Flick,* 140 Cal. App. 14, 22 [35 Pac. (2d) 210]; *Held* v. *Jirdon,* 5 Cal. App. (2d) 531, 533 [42 Pac. (2d) 1046].) In several of these cases the above-quoted proviso of section 136a of the California Vehicle Act was considered and held applicable. In *Smith* v. *Pacific Greyhound Corp.,* 139 Cal. App. 696 [35 Pac. (2d) 169], where the stoppage of the machine had been due to a failure of its lights, the operator was said to have come within the same exception. (See, also, *Giorgetti* v. *Wollaston,* 83 Cal. App. 358 [257 Pac. 109].) Whether the occasion for stopping was sufficiently imperative to bring the driver within the exception is ordinarily a question not of law but of fact. (*Gior-*

*getti* v. *Wollaston, supra,* pp. 363, 364; *Fleming* v. *Flick, supra,* p. 21.)

 Even, however, if Keglor was justified in stopping when he did stop, such justification would not be necessarily determinative of the instant case. Here there was involved not merely the matter of parking the truck and trailer upon the pavement of the highway, but there was also involved the question as to whether Keglor, the driver, did in fact use reasonable care to notify the public of its presence. True, he claims, as we have seen, to have stood in the highway and signalled respondents' vehicle with his flashlight, but in view of the fact that none of the occupants of the car coming from the east saw the flashlight, the trial court was under no obligation to believe that he used it, and to the extent that its findings are properly on file we are bound by its express determination that he did not. Moreover, it was for the trial court to say whether, in order to have effectually signalled, he ought to have stationed himself behind the trailer instead of abreast the front of the truck. To the effect that this element may be material, see *Silvey* v. *Harm, supra.* The trial court was not, of course, even bound to believe Keglor's testimony as to the shortness of time that elapsed between the stopping of the truck and the collision, or to believe that there was not time in which to have awakened Hamilton and gotten out and set the flares. Indeed, though the record shows that there was a curve in the road between Grey's Wells and the place where the accident occurred and some slope to the ground, there is nothing to indicate any obstruction, as far as the terrain was concerned, to seeing for a long distance and the court may well have believed that the very fact that the occupants of respondents' car had not noticed the truck and trailer ahead of them indicated that the lights were out for a longer time than Keglor admits. Again the trial court may have believed that due care would in the circumstances have required Keglor, instead of stopping, when his lights began to dim, to have continued until he reached a service station which he himself says that he knew to exist about a mile ahead. Indeed, while the general burden of proof continued with the plaintiffs yet it must be remembered, as said in *Casey* v. *Gritsch,* 1 Cal. App. (2d) 206, 211 [36 Pac. (2d) 696], quoting from *Watt* v. *Associated Oil Co.,* 123 Or. 50 [260 Pac. 1012], that:

"One who parks his automobile upon the public traveled part of a highway is *prima facie* a violator of the law, and it is incumbent upon him to show affirmatively that it was necessary for him to so park it at that time and place. It is not the duty of a party injured in a collision under such circumstances, to show that such parking was not necessary, but for the other party to bring himself within the exception provided by the statute."

In our opinion the question of negligence on the part of the appellants was one for the determination of the trial court and we cannot say that its determination was not sustained by the evidence.

█ It is further claimed on behalf of the appellants that the decedent, J. M. Scoville, was himself negligent as a matter of law in that he admits being partially blinded by the lights of the automobile said to have been coming from the west, in which circumstance it is claimed that he was in duty bound to slow down his machine accordingly. (Citing *Zarzana* v. *Neve Drug Co.*, 180 Cal. 32 [179 Pac. 203, 15 A. L. R. 401] ; *Woodhead* v. *Wilkinson*, 181 Cal. 599 [185 Pac. 851, 10 A. L. R. 291] ; *Reaugh* v. *Cudahy Packing Co.*, 189 Cal. 335 [208 Pac. 125] ; *Hatzakorzian* v. *Rucker-Fuller Desk Co.*, 197 Cal. 82 [239 Pac. 709, 41 A. L. R. 1027] ; *Meads* v. *Deener*, 128 Cal. App. 328 [17 Pac. (2d) 198].) It appears to us, however, that that is in the circumstances of this present case, again a question of fact. It must be remembered that he was operating upon the right side of the highway and that in ordinary circumstances vehicles proceeding westerly would give warning by tail-lights of their presence, that vehicles proceeding easterly would not have interfered with him, and that a stalled vehicle without lights presented a somewhat unusual situation.

It has been held in several recent cases that the failure to see an unlighted object within the range of one's headlights is not, as a matter of law, negligence. (*Casey* v. *Gritsch*, 1 Cal. App. (2d) 206, 213 et seq. [36 Pac. (2d) 696] ; *Smarda* v. *Fruit Growers' Supply Co.*, 1 Cal. App. (2d) 265 [36 Pac. (2d) 701] ; *Hine* v. *Leppard*, 5 Cal. App. (2d) 154, 156 [42 Pac. (2d) 389, 43 Pac. (2d) 595].) In these circumstances it was for the trial court to find as a fact whether or not Scoville was guilty of contributory negligence.

Any question that may exist in the case about the regularity of the action of the trial court in undertaking to substitute for J. M. Scoville as a party plaintiff Mrs. Scoville as administratrix of his estate after the appeal from the judgment had been taken to this court may now be treated as eliminated by the action of this court in making its own order of substitution, which may now be treated as effectual for all purposes of the case.

The judgment is reversed and the cause remanded to the trial court with instructions to that court to make findings of fact in accordance with the evidence already taken and the views herein expressed, including a specification with proper particularity of all items of damage allowed, and to file such findings together with judgment thereon *nunc pro tunc* as of December 1, 1936.

Barnard, P. J., and Marks, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 4, 1938.