[Civ. No. 6245. Third Appellate District.—August 5, 1940.]

CARL R. OHRAN, Respondent, v. THE COUNTY OF YOLO, STATE OF CALIFORNIA (a Political Subdivision), Appellant.

[Civ. No. 6246. Third Appellate District.—August 5, 1940.]

CARL R. OHRAN et al., Respondents, v. THE COUNTY OF YOLO, STATE OF CALIFORNIA (a Political Subdivision), Appellant.

[Civ. No. 6247. Third Appellate District.—August 5, 1940.]

JOHN L. OHRAN et al., Respondents, v. THE COUNTY OF YOLO, STATE OF CALIFORNIA (a Political Subdivision), Appellant.

Gerald M. Desmond and C. C. McDonald for Appellant.

Huston, Huston & Huston, Gregory, Hunt & Melvin and Faulkner & O'Connor for Respondents.

HAWKINS, J., *pro tem.*—Herein are considered appeals from certain judgments and orders granting motions for new trials in three separate actions, brought by members of two Ohran families against the County of Yolo for damages based upon the liability of said county under the Public Liability Act of 1923 (Stats. 1923, chap. 328, p. 675), which said actions were consolidated for the purposes of trial. The trial was by jury and resulted in the following verdicts and judgments:

In action No. 6245 a verdict and judgment for $2,000 in favor of Carl R. Ohran for damages for the death of his eight-year-old son, Duane.

In action No. 6246 a verdict for $2,000 in favor of Carl R. Ohran for damages for the death of his wife, Golda Ohran, and a verdict in the sum of $6,000 in favor of Norylene Ohran for the death of her mother, Golda Ohran. The amount of the separate verdicts, $8,000, was entered in a single judgment, segregated as above.

In action No. 6247 a verdict and judgment for $2,000 in favor of John L. Ohran and Marguerite Ohran for damages for injuries to the wife and consequential damages to the husband.

In all three cases the defendant moved for a new trial on all the statutory grounds. In action No. 8665 plaintiff Carl R. Ohran moved for a new trial on the ground that the damages for the death of his son were inadequate.

In action No. 6246 plaintiff Carl R. Ohran moved for a new trial on the ground that the damages awarded were inadequate.

All of the motions for a new trial made by the defendant were denied by the trial court. Each of the motions for a new trial made by the plaintiff Carl R. Ohran in cases No. 6245 and No. 6246 was granted and the order limited the new trial so granted solely to the issue of damages.

Defendant appeals from each of the orders granting a new trial on the limited issue as aforesaid and from all of the judgments, including the ones following which the limited new trials were granted.

The essential facts are:

On March 21, 1937, about 1 o'clock in the afternoon, John L. Ohran, thirty-eight years old, with twenty years' experience in operating an automobile, was driving an automobile over a county highway constructed on the top of a levee, in the County of Yolo. The car was equipped with practically new tires. None of the Ohrans had been over the road before.

With the driver were riding the other members of the two Ohran families heretofore named. It had been raining steadily for more than an hour and was still raining at the time of the accident, which occurred at a slight curve on a certain section of highway about 4.14 miles long, at a point

opposite a ranch owned by one Nevis. Immediately before the accident John L. Ohran had been driving for about a mile at a speed of around thirty-five miles an hour without any trouble whatever, keeping always on the right-hand side of the highway. When he reached the Nevis property the rear wheels skidded and the car plunged off of the levee into the Sacramento River. Golda and Duane Ohran were drowned and Marguerite Ohran suffered injuries as the proximate result of the accident.

The paved portion of the highway was twenty feet wide, was constructed with a standard black macadam base, surfaced with a thin coating of hot liquid asphalt into which fine heated rock screenings were rolled while the asphalt was still hot. The highway had been in active use for nine years and no resurfacing or other repair work had been done on it during that time.

Plaintiff introduced evidence and the implied finding of the jury was to the effect that this 4.14 mile section of highway was still in fair condition and not particularly slippery in wet weather, except for a stretch about five hundred feet long adjoining the Nevis property where the accident occurred, that this section did not have any rock surfacing, due to the fact that the rock screenings were applied when the liquid asphalt was cold and therefore did not bind and that this five hundred foot stretch could not be readily distinguished from the rest of the highway in rainy weather by anyone unfamiliar with the road.

Appellant makes four assignments of error:

(1) The evidence was insufficient to justify the verdicts, and the judgments are without legal evidentiary support.

(2) The court erroneously instructed the jury that the law presumed that the driver of the car, John L. Ohran, and the owner of the car, Carl R. Ohran, took ordinary care for their own safety.

(3) The court erred in failing to refer to the question of proximate cause in one of its instructions to the jury and gave erroneous instructions upon the question of imminent peril and sudden emergency.

(4) The court erred in its orders granting a limited new trial as to the issue of damages in two of the actions.

█ In support of its first assignment of error appellant contends that there was no substantial legal evidence to sup-

port the implied finding of the jury that the highway at the point of the accident was in a dangerous or defective condition.

This contention is not tenable. B. A. Taylor, a witness produced by plaintiffs, testified that he had driven a school bus over the highway for sixteen years, including a number of years before it was paved; that he witnessed a good deal of the construction work when it was done in 1929; that he had seen the liquid asphalt spread on the five hundred foot stretch in question, but had not seen any rock put on; that he knew there was considerable delay after the asphalt was spread because he traveled the road to the bridge (about one mile), and there was no rock coming down; that "the screenings failed to bound or contact the oil and was all knocked off by the vehicles passing over the road"; that he first noticed the slippery condition with the first rains in the fall of 1929; that when it was wet he always slowed down to five miles or less per hour when passing that spot, but drove thirty-five miles per hour on the rest of the highway; that he had actually seen at least three cars going less than twenty miles per hour skid badly in front of his bus on that stretch; that he had seen about twenty-five cars that had skidded completely off of the levee; that there were no slick places anywhere else on the highway; that on March 31, 1937, its surface was pure asphaltum oil with no rock, gravel or anything to afford traction. He further testified, "Well, it was slipperier than anything I know of. I don't know that ice would be any slipperier than the surface of that highway was when wet." (Referring to the five hundred foot stretch.)

He further testified that no repairs were ever made on that stretch; that there were no warning signs or railings anywhere on the road; that two or three years prior to the accident he talked to Mr. Merkeley, a supervisor, and asked him when he was going to fix that piece of road; that Merkeley said he didn't know, and that the witness replied, "I suppose you will wait until somebody is killed before you think about it"; that in January, 1937, about three loads of screenings were dumped alongside the road near the place of the accident, but they were never used.

Other witnesses testified to the slippery condition of the five hundred foot stretch and to other similar accidents, one wit-

ness testifying that about forty cars had slipped off the road at that particular spot.

No objection was made to the introduction of evidence as to similar accidents, and appellant does not attack its admissibility. He does claim, however, that it has no substantial evidentiary value. With this we cannot agree.

There is ample evidence in the record to support the implied finding of the jury that there was a dangerous or defective condition in the highway at the place where the accident occurred.

■ It was stipulated that the board of supervisors of the County of Yolo was at all times the governing and managing board of said county and had full power and authority to remedy any dangerous or defective condition which might exist.

Appellant further asserts that the board of supervisors did not have legal notice of the alleged dangerous or defective condition. There is no merit in this contention. Supervisor Merkeley, who had charge of the road work in that district, testified that at least half a dozen persons had talked to him about the condition of the road during a period of two or three years before the accident and that he did not remember whether or not he had discussed the matter with the board of supervisors. The jury had a right to infer that the whole board had notice from the facts and circumstances of the case, including the fact that the screenings were dumped at the spot in question just a few months before the accident, and the further fact that the road was resurfaced after the accident.

■ It is only necessary that the supervisor in charge of the highway have knowledge of the condition. (*Rubell* v. *Santa Clara County,* 27 Cal. App. (2d) 377, at 380 [80 Pac. (2d) 1023].) Furthermore, actual notice is not necessary, constructive notice being sufficient. Where the condition is created by the party claimed to be liable, no further notice is necessary. (*Sandstoe* v. *Atchison, T. & S. Fe Ry. Co.,* 28 Cal. App. (2d) 215 [82 Pac. (2d) 216].) Long-continued neglect is such constructive notice as to fix liability. (*Boyce* v. *San Diego High School Dist.,* 215 Cal. 293, at 295 [10 Pac. (2d) 62].)

■ As a second assignment of error appellant claims that the following instruction given by the court is prejudicially erroneous:

"You are instructed that the law presumes that both Carl R. Ohran and John L. Ohran took ordinary care for their own safety."

In support of its position it points to the fact that all evidence as to the conduct of the driver of the car, John L. Ohran, and of his brother, Carl R. Ohran, immediately preceding and up to the moment of the accident, came without contradiction from the lips of respondents, John L. Ohran, Carl R. and Marguerite Ohran, who, with the exception of Norylene Ohran, who did not testify, were the only eye-witnesses to such conduct.

The testimony of these witnesses, without substantial conflict, was to the effect that John L. Ohran, at the place of the accident and for a distance of at least a mile before reaching it, drove the car at a speed of approximately thirty-five miles per hour, stayed on the right-hand side of the road, and that there was nothing unusual about his manner of driving.

Appellant has no doubt sought to fit the facts relating to contributory negligence in this case to the rule laid down in the case of *Mar Shee* v. *Maryland Assur. Corp.*, 190 Cal. 1 [210 Pac. 269], which states, "a fact is proved as against a party when it is established by the uncontradicted testimony of the party himself or of his witnesses, under circumstances which afford no indication that the testimony is the product of mistake or inadvertence; and that when the fact so proved is wholly irreconcilable with the presumption sought to be invoked, the latter is dispelled and disappears from the case."

■ But appellant has overlooked the fact that the question to be determined here is not what was the conduct of John L. Ohran and Carl R. Ohran, but were John L. Ohran and Carl R. Ohran guilty of contributory negligence.

To determine this latter question other factors than the conduct of the driver must be considered, to wit, the state of the weather, the mechanical condition of the car, and the condition of the highway. A speed of thirty-five miles an hour even in a rainstorm is not necessarily negligence *per se*.

There was a sharp conflict in the evidence concerning the condition of the highway. Respondents' witnesses testified that it was slippery only on the five hundred foot stretch where the accident occurred, while witnesses for appellant testified that it was equally slippery throughout the whole section of 4.14 miles. With such a conflict it cannot be said that contributory negligence was established as a matter of law.

 The presumption in question is disputable but is satisfactory if uncontradicted. (Code Civ. Proc., sec. 1961.) A disputable presumption may be controverted by other evidence, direct or indirect, but unless so controverted the jury are bound to decide according to the presumption. (Code Civ. Proc., sec. 1961.) When so controverted, an issue of fact is raised which it is the duty of the court to determine as in other cases, and its conclusion is conclusive upon an appellate court unless it be manifestly without support in the evidence. (*Simonton* v. *Los Angeles Trust & Sav. Bank*, 205 Cal. 252, at 258 [270 Pac. 672]; *Smellie* v. *Southern Pac. Co.*, 212 Cal. 540 [299 Pac. 529].)

 Since a presumption is made evidence by statute, it is illogical to say that it may be dispelled by a mere conflict in the evidence as to the fact to which it is opposed. A sounder rule would be that though evidence, irrespective of its source, conflicts with a presumption, the latter is not dispelled unless the fact opposed to the presumption is proved as a matter of law.

This court is aware that the rule enunciated in *Mar Shee* v. *Maryland Assur. Corp.*, *supra*, has not always been followed with strictness by the appellate courts of this state; that in some instances it has been indicated that an instruction like the one here attacked should not be given except where the one in whose favor it is sought to be invoked is deceased and there are no eye-witnesses to the accident.

The cases in which this question is involved are numerous. They are not altogether in harmony and many of them are factually different from the instant case. In most instances where the giving of the instruction was held to be erroneous it was not considered prejudicial.

In *Ellison* v. *Lang Transp. Co.*, 12 Cal. (2d) 355 [84 Pac. (2d) 510], the court at the plaintiff's request gave the following instruction:

"The presumption is that a person takes ordinary care of his own concerns. This presumption is in itself a species of evidence and it shall prevail and control your deliberations until and unless it is overcome by satisfactory evidence."

The court in that case did not hold directly that the instruction was erroneous but stated that it could "not properly be objected to by the defendant" because of the qualifying language in the last sentence of the instruction. There is no such qualifying language in the instruction in the instant case. ▮ But, in a civil case, it is required that instructions be presented to the court and served on the adverse party before the first witness is sworn. (Code Civ. Proc., sec. 607a.) It must be presumed that the instruction complained of was served on the adverse party before the taking of testimony. (*Ramos* v. *Service Brothers,* 118 Cal. App. 432, at 437 [5 Pac. (2d) 623].)

In the instant case a full week elapsed between the calling of the first witness and the instruction of the jury. If appellant wished a more elaborate instruction it was its duty to prepare and present the same to the court. (*Smith* v. *Pacific Greyhound Corp.,* 139 Cal. App. 696, at 705 [35 Pac. (2d) 169].) Having failed to do this it cannot now complain of the meagerness of the instruction. (*Townsend* v. *Butterfield,* 168 Cal. 564, at 569 [143 Pac. 760].)

With these authorities in mind, the instant case stands upon the same footing as *Ellison* v. *Lang Transp. Co., supra,* and the giving of the instruction, if error, could not be held to be prejudicial under the holding in that case.

*Campbell* v. *City of Los Angeles,* 28 Cal. App. (2d) 490 [82 Pac. (2d) 720], appears to be the strongest case cited by appellant in the support of its contention concerning the presumption; but this case has been disapproved in part at least by the Supreme Court. (*Westberg* v. *Willde,* 14 Cal. (2d) 360 [94 Pac. (2d) 590].)

It was proper to give the instruction under the circumstances existing in the instant case, and in any event the substantial rights of appellant were not prejudiced thereby.

▮ In its third assignment of error, appellant complains of two instructions. The first was a formula instruction which omitted the element of proximate cause. Elsewhere the trial court fully and accurately instructed the jury upon

the question of proximate cause. Appellant concedes that this instruction, standing alone, constitutes harmless error, but asserts that it magnifies the alleged error of the instruction concerning the presumption heretofore discussed and makes it impossible to cure said error by reading the instructions as a whole. Since we have not held that it is necessary to read the instructions as a whole to cure said alleged error, this contention becomes of no moment.

The second instruction was as follows:

"You are instructed that a person suddenly confronted with danger through the negligence of another is not required to use that calm dispassionate judgment and action that is required in calmer moments, and when not under the stress of circumstances.

"Therefore, if you find that the driver of this car was suddenly confronted with danger caused by the negligence of the defendant, then the driver in attempting to escape the impending danger was only required to use the care and skill that an ordinarily prudent and skillful person would use under the same or similar circumstances, and not that degree of care and skill that is required when not thus confronted with danger, and if you find that the driver did use such care and skill under the circumstances proven, he was not guilty of contributory negligence."

Appellant complains that this instruction fails to include the element that the situation of imminent peril was created through no negligence on the part of those seeking its benefit. The language used "through the negligence of another" and "caused by the negligence of the defendant" has an equivalent effect. Similar language used in defining the law on this subject has been approved by our appellate courts. (*Coffman* v. *Singh,* 49 Cal. App. 342, at 350 [193 Pac. 259]; *Reinders* v. *Olsen,* 60 Cal. App. 764, at 772 [214 Pac. 268].) It was not error to give this instruction.

Appellant does not attack the orders granting new trials referred to in its fourth assignment of error, but claims that the orders should have been general and not limited to the question of damages.

It is conceded by all the interested parties that the verdicts were inadequate, but appellant's position is that the inadequacy of the damages awarded furnishes convincing

proof that the verdicts were reached as the result of a compromise, citing *Bencich* v. *Market Street Ry. Co.*, 20 Cal. App. (2d) 518 [67 Pac. (2d) 398]. This contention is somewhat negatived by the fact that much more adequate verdicts were returned in favor of the other plaintiffs. The trial judge also had the right to assume that the verdicts might have been influenced unconsciously by the fact that members of the jury were taxpayers in the county and would have to participate in the payment of the judgments.

The instant case also differs from the Bencich case in that here the jury's verdicts were for damages for the loss of a wife and minor son, the monetary value of which it is impossible to estimate with any degree of certainty, while in the Bencich case the verdict was for damages for injuries to plaintiff therein which were capable of almost exact calculation. The cases present sufficient distinguishing features to justify the trial court in not following the Bencich case as a precedent.

The action of a trial court in granting a motion for a new trial will not be disturbed on appeal, in the absence of a showing of an abuse of discretion. We find no such abuse here.

It is conceded that if John L. Ohran, the driver of the car, were negligent, such negligence would be imputed to Carl R. Ohran and Marguerite Ohran, but not to Norylene Ohran. Therefore all discussion herein regarding the question of contributory negligence has no application to the judgment in favor of Norylene Ohran.

The orders granting new trials on the limited issue of damages and the judgment in favor of John L. Ohran and Marguerite Ohran are affirmed.

Tuttle, J., and Pullen, P. J., concurred.

A petition for a rehearing of these causes was denied by the District Court of Appeal on September 4, 1940, and an application by appellant to have the causes heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 3, 1940.

On October 18, 1940, the District Court of Appeal made the following order in the above causes:

THE COURT.—Pursuant to motion of counsel for respondents and good cause appearing therefor, it is hereby ordered that the judgment entered herein August 5, 1940, in the consolidated causes of Ohran et al. v. County of Yolo, be corrected to read as follows: "The order granting a new trial to plaintiff Carl R. Ohran in Superior Court Action No. 8665, on the limited issue of damages, is affirmed; the order granting a new trial to Carl R. Ohran, one of the plaintiffs in Superior Court Action No. 8666, on the limited issue of damages, is affirmed; the judgment in Superior Court Action No. 8666 in favor of Carl R. Ohran, as guardian of the person and estate of Norylene Ohran, a minor (the other plaintiff in said action), is affirmed; the judgment in Superior Court Action No. 8667 in favor of John L. Ohran and Marguerite Ohran (his wife) is affirmed."